WILLIAM D. MURPHY, Appellant, v. RALPH LOCKWOOD, Appellee.

21   611
152   375

### APPEAL FROM MARSHALL.

In a contract for the conveyance of land, where the vendor has shown great indulgence, time not being of the essence of the contract, he may be prevented from suddenly insisting upon a forfeiture.

Time in certain cases may be considered material, though no part of the contract itself. As when one party fulfills on his part, he may demand a like performance of the other, and upon default he may rescind.

But in all cases, the fulfillment must be of such a character as will sustain a bill for specific performance.

A party claiming the benefit of a contract, must show himself prompt and eager to perform on his part.

Covenants to pay and to convey are dependent, and an action to compel payment will depend upon a previous offer to convey.

Where a party agrees to make a warrantee deed, with full covenants, free from all incumbrances, before he can exact performance or forfeiture of the vendee, the vendor must tender a deed, having covenants for seizin, that he has full right to convey, also a covenant for quiet enjoyment, and against incumbrances, also for further assurance.

The party against whom a rescission of a contract is sought, must be placed in *statu quo*, by the other party, by a tender or return of notes, money, etc.

The rule in equity is compensation, not forfeiture.

THIS is a bill in chancery for specific performance, filed by Lockwood against Murphy, in the Marshall Circuit Court.

The bill charges that Murphy and Lockwood, on the 5th day of April, 1851, entered into a sealed agreement for the sale by Murphy to Lockwood of certain real estate in Marshall county.

The agreement shows that the sale was for eight hundred acres of land, which is described therein ; that Lockwood paid down $100, and agreed to pay $806.80 in four months, and $2,140 in one year from the date of the agreement ; that for the last two sums of money Lockwood gave his notes to Murphy, and that upon the payment of all that should be due upon the contract, Murphy and his wife should make and execute to Lockwood their warranty deed, with full covenants, except as against the taxes of the year 1851.

That the contract was executed by Murphy and Lockwood only, and that at the time of the purchase, Lockwood contracted to pay the full value of the land.

That soon after the making of the contract, Lockwood became embarrassed in his pecuniary affairs, and could not *conveniently* make payment according to the terms of the contract, and that Murphy did not exact prompt payment.

The bill further charges that on the 8th day of August, 1851, Lockwood paid Murphy $100 on the contract, and that Murphy endorsed the same on the notes due at that time.

That on the 3rd day of May, 1855, Lockwood paid the further sum of $100 on the contract, and that he had paid all the taxes assessed upon the land, since the making the contract, which in the aggregate amounted to about $100.

That since the making of the contract Lockwood had entered upon and taken possession of the land and made improvements thereon to the value of $800.

That Murphy still holds the said notes ; that he had never delivered, or offered to deliver to Lockwood, a deed for the land, according to the contract, and that the parties to the contract, nor either of them, had ever in any manner rescinded the same.

That on the 8th day of October, 1855, Lockwood tendered to Murphy $3,617.50, being the entire sum of money, of principal and interest, due upon the said notes.

That Murphy, in order to cheat and defraud Lockwood out of what he had paid on the contract, and out of the money he had paid for the taxes assessed on said land, and out of his improvements made thereon, refused to receive the money tendered and make a deed for the land ; that a deed was then demanded ; that the land had, within a year previous to the filing the bill, increased in value four thousand dollars, which the bill charges was the reason why Murphy would not convey ; that but for the pecuniary embarrassments of Lockwood, he would have paid the notes, and insists that time is not of the essence of the contract.

The bill waives an answer under oath, and prays that Murphy may be compelled to specifically perform the contract.

The answer of Murphy admits the making the contract as charged in the bill ; the payment of the $100 down, and making and delivering to him of the notes for the balance of the purchase money.

It denies that Lockwood contracted to pay all the land was worth when the contract was made, but admits the pecuniary embarrassments of Lockwood, and insists that he was bankrupt, and refers to, and makes exhibits of transcripts of judgments rendered against him in New York city, and to an examination of Lockwood under his oath, before the city court of Brooklyn, New York, as an insolvent debtor, which took place in October, 1854, at which examination, Lockwood admitted under oath, that he had no interest in any lands in the State of Illinois.

The answer admits the payment of the $100 on the 8th of August, 1851, and the like sum on the 3rd day of May, 1855.

The answer charges that on the 2nd day of May, 1855, Murphy tendered to Lockwood a full covenant warranty deed for the land, as required by the contract, at his office, 107 South street, New York city, executed by himself and wife, and duly acknowledged, and then demanded immediate payment from

Lockwood, of all that was due upon the contract, and exhibits and makes a copy of said deed a part of the answer; that Lockwood made no objection to the deed or acknowledgment, but refused to receive the same and pay the balance of the purchase money, but requested time until the next day to get the money; that the next day Lockwood called upon Murphy, and informed Murphy that he could not get the money, but offered to pay then $100, on the contract, if Murphy would postpone the payment of the balance of the money, until the 3rd day of July, 1855; that Murphy assented to the offer and received the $100, and that all the purchase money was due, and unpaid, on the 1st day of July, 1855, except the said $200.

That on the 5th day of July, 1855, Murphy again tendered to Lockwood said deed, and again demanded payment from him of the balance of the purchase money; that Lockwood refused to pay the same; that Murphy then had the notes ready to be delivered to Lockwood, that Lockwood then said that he was poor, and could not get the money, and that he was entirely insolvent.

· That thereupon, Murphy caused the affidavit of Orlando B. Lewis, (a copy of which was attached to the answer, and made a part thereof) of the tender of the deed, and demands of payment of the purchase money, to be recorded in the office of the recorder, of Marshall county, Illinois, to show that default had been made by Lockwood, and that the contract was rescinded; that Murphy received the $100 in the month of May, previous, upon the ground, and consideration, only, that prompt payment should be made, of the balance of the money, and that he never, in any other manner, extended the time of payment.

That Lockwood had never paid any taxes on the land, but that since the making the contract, other persons had paid them, although Murphy had always looked after them, with a view of paying them; that Lockwood had never entered upon the lands or made any improvements thereon; that Murphy still held the notes, which were negotiable.

The answer denies that the contract is still in force, and binding on Murphy, but insists that the defaults and vexatious delays of payment of the purchase money released him from performing the same.

It denies the tender of money, and demand of a deed on the 8th of October, 1855. It denies that he ever intended to defraud or cheat Lockwood, or that he had ever refused a deed, and refused to receive the purchase money, or that he had threatened to sell the land.

It admits that the land ever since the making the contract had steadily increased in value, and charges that Murphy well knew the same when he tendered the deed to Lockwood, and

demanded payment of the money, and charges that Murphy had. repeatedly notified Lockwood that the contract was rescinded; that he did so May 2nd, and July 5th, 1855, by reason of Lockwood not complying with the terms thereof, and of Murphy's offers so to do, and insists that there had been, on part of Lockwood, unreasonable and vexatious delays of payment; and offers to refund to Lockwood all the money he had paid on the contract, and all the taxes he had paid on the lands, if any, and to bring into court the notes, and surrender up the same to Lockwood, and insists that Murphy had been greatly injured by reason of the non-payment of the purchase money when due, and charges that Lockwood suffered the notes to be protested, and exhibits the protests.

Lockwood files a general replication to the answer.

The proofs of Lockwood show the making the contract, and the terms thereof as set forth in the bill and admitted in the answer.

*John W. Hubbard* testified, that. on the 8th October, 1855, Lockwood, at the office of Murphy, 107 South street, New York, tendered to Murphy over $3,600, over $3,500 of which was gold, and the balance in bills; that the tender was made on a land contract made between the parties for land in Illinois; that Murphy refused to receive the money as tendered, but insisted that the contract was at an end, and had been since the 3rd of July, 1855, which Lockwood denied, and claimed that the contract was in full force.

*Wm. B. Green* testified, that after the assignment of the interest of Lockwood in the land was made to him, he relinquished his interest in the lands to Lockwood, and that he had often paid Lockwood's taxes, on his lands in Marshall county, as his agent.

The testimony of *S. L. Fleming* was taken orally in court, and he testified, that he saw Murphy at his office in August, 1855; that Murphy told him that the 3rd or 5th of July previous, he demanded of Lockwood payment for the land; that Lockwood told him (Murphy) that he was poor, and had no money to pay at that time; that between the time he had demanded the money, and the time of the conversation between Murphy and Fleming, Lockwood had been to Murphy and told him that he had a house in Brooklyn which he would like to trade to him (Murphy) on the land contract; that he (Murphy) said he did not take it on account of the price, or the title, witness did not remember which; that Murphy said he considered the contract rescinded and at an end, and had notified Lockwood to that effect the July previous; that he (Fleming) knew the three prairie quarters of the land, and had a general knowledge of

the balance; that in 1851 he thought the land might have been worth from $3 to $5 per acre; that about one-half the land was barrens, which was not worth much at that time; that in 1855 the same lands were worth ten dollars per acre on an average; that there was a gradual rise in the value of land, from April 5th, 1851, to 5th April, 1855.

By the decree the court required that Murphy, within sixty days from the adjournment of the Circuit Court of Marshall county, execute and deliver to Lockwood, a warranty deed, for the land described in the bill, with covenants against all incumbrances, except the taxes of the year 1851, and with release of dower by the wife of the said Murphy, provided Lockwood paid or tendered to Murphy the sum of three thousand six hundred and seventeen dollars and fifty cents, within the said sixty days, and appointed a commissioner to make such deed, in case Murphy should make default in making the same.

Upon the filing of which decree, the defendant, Murphy, entered his motion to set aside the decree and to grant a new trial, which was overruled by the court, whereupon Murphy prayed an appeal, which was granted.

The errors assigned are as follows:

1st. The court erred in decreeing a specific performance of the contract referred to in the bill.

2nd. The court ought to have rendered a decree dismissing the bill.

W. B. Scates, and Burns & Richmond, for Appellant.

N. H. Purple, for Appellee.

Breese, J. This was a suit in equity to compel the specific performance of a contract under seal, to convey certain lands lying in Marshall county, purchased on credit in part. The contract bears date April 5, 1851, and stipulates that the last payment shall be due April 5, 1852.

The proofs show that the vendee paid down at the time of the purchase, one hundred dollars. On the eighth day of August, 1851, he paid another hundred dollars. He also paid all the taxes assessed upon the land from the time of the purchase, until the time of filing the bill, and also, took possession of the lands, and made valuable improvements on them.

From the time the last installment became due, no payment was made on the contract until the second of May, 1855, when the vendee paid an additional hundred dollars, which seems to have been fully accepted by the vendor. During all this period, the vendor manifested the utmost kindness and indulgence

towards the vendee, who, it appears had become very much embarrassed in his finances, which resulted in a failure in his business. He was not importuned to pay, nor threatened with extreme measures in case he did not pay. At the time of this payment, the vendor extended the credit two months, until the second day of July, 1855. On the expiration of this credit, the vendor demanded full payment of the residue of the purchase money, and tendered a conveyance of the lands, describing them erroneously as lying and being in Putnam county, but correctly as to township, range and sections, but did not tender the notes given by the vendee, or offer to return the money paid on the contract, or to reimburse him for the taxes and improvements made on the land. On failure of the vendee to comply, the vendor proceeded to declare the contract forfeited, and caused an affidavit to that effect to be made and recorded in Marshall county.

After the receipt of the payment in May, 1855, the vendor in August following, entertained a proposition made by the vendee, to convey to him certain real estate in the city of Brooklyn, New York, as a payment on the contract, which, for some reason not fully explained, was not acceded to. This failing, vendee obtained the money, and on the eighth of October, 1855, some eight weeks thereafter, tendered to the vendor the balance of the purchase money with the interest due, and demanded a deed according to the contract, which being refused, this bill was filed.

These are the prominent facts in the case, and the question is, does the complainant, the vendee, occupy such a position, under all the circumstances, as to entitle him to a decree for a specific performance.

It will be seen that the contract does not in terms, make the time of performance, or punctuality in the payments, an essential condition, nor is there any provision in it, authorizing the vendor to declare the contract forfeited for a failure to make punctual payments, nor does it authorize him to retain any portion of the purchase money paid; and it stipulates for a deed with full covenants.

It must be conceded that the vendee did not pay promptly, that a long time elapsed within which he should have performed on his part, or offered to perform, and which, under ordinary circumstances, would justify a rescission of such a contract. But it is apparent, in this case, the delay in payment, was not chargeable to any unwillingness to pay, or to a desire to take any advantage of the vendor, but a disposition was manifested throughout to perform the contract. The remissness we think, was overlooked by the vendor and is to be considered as waived,

by him, he having taken no steps during that long interim between 2nd April, 1852, and the 2nd May, 1855, when he accepted a further payment of one hundred dollars, to declare the contract forfeited.  His silence and inaction, under such circumstances, must be regarded as acquiescence on his part in the delay, and should preclude him from insisting upon a forfeiture. Time does not seem to have been regarded by the parties, as of the essence of this contract, and we must take it, as they regarded it.  Parties may make time material, and so it may be considered as material, though no part of the contract itself. As when one party fulfills all the conditions of a contract, he may demand a like performance of the other party within a reasonable time, or on the day named for performance, and upon default may rescind.  But in all cases, the fulfillment must be of such a character as will sustain a bill for specific performance, otherwise it may not be sufficient to lay the foundation for a rescission upon the mere ground of delay.  The circumstances attending such contracts serve to show whether time is material, and of the essence of the contract or not, and equity will not relieve the negligent party from the consequence of his own laches, the rule being, that the party claiming the benefit of the contract must show himself ready, desirous, prompt and eager to perform on his part.  Nothing of this kind is shown by the parties to this contract.  The delay in the payments was acquiesced in by the vendor, and no laches is now justly imputable to the vendee, but that which occurred between the payment on the second of May, 1855, and the eighth of October following when he tendered the whole amount due.  Before July, 1855, the vendor had given no intimation of any kind, that he desired or intended, to rescind the contract, but seemed to be content with the conduct of the vendee in delaying payment.

It is insisted by the appellant, that his tender of a deed, and demand of payment, was a complete fulfillment on his part, and rendered prompt compliance on the part of the appellee indispensable.

Was this tender, a compliance with the terms of the contract ?

The contract provides, that " on the payment of all the herein described amounts as they become due and payable, the said William D. Murphy and his wife, agree to make and execute a warranty deed with full covenants free from all incumbrances except the taxes of 1851, for all of the described lands to the said Ralph Lockwood his heirs or assigns."

These covenants are mutual and dependent, and the rule, in such case is, that neither party can bring an action without first performing, or offering to perform on his part.  Platt on Covenants, 86 to 90, and case referred to in notes.

So a covenant by the vendee to pay, and of the vendor to convey upon payment are dependent covenants, and an action to compel payment cannot be maintained without proof of a previous tender of a conveyance.    2 Hilliard on Vendors, 2, chap. 26 ; *McCullough* v. *Dawson*, 1 Carter (Ind.) R. 413 ; *Adams* v. *Williams*, 2 Watts and Serg. 227.

Being then a mutual dependent covenant, the vendor should have accompanied his demand of payment with a tender of such a deed as was stipulated in the contract.    Did he tender such a deed?    The covenants in the deed tendered were as follows : " And the said parties of the first part do hereby covenant and agree with the said party of the second part, that at the time of delivery hereof, the said parties of the first part are  the lawful owners of the premises above granted, and seized thereof in fee simple absolute, and that they will warrant and defend the above- granted  premises  in  the  quiet and peaceable possession of the said party of the second part, his heirs and assigns forever."    ·

The contract, as we have seen, provided for a deed  with  full covenants.    A deed with such covenants should contain, first, a covenant that the grantor was seized of the very estate which he purported to transfer, called the covenant for seizin ; second, that  he  had  a  good and  perfect  right  so to transfer it ; third, that the grantee should quietly possess and  enjoy the  premises without interruption, called the covenant  for  quiet enjoyment ; fourth, that such should be the case free and clear from  all  incumbrances, leases, trusts, etc., called the covenant against incumbrances ; fifth, that  such  other deeds or instruments should be thereafter executed as might be necessary to perfect or confirm the title, called the  covenant for  further assurance ; and  sixth, the covenant of warranty.    Rawle on Cov. for Title, 28.

In the deed tendered, three important covenants are omitted, namely, the one against incumbrances, and for further assurance, and of  general warranty of title, and also the covenant of a right to  convey, unless that can be comprehended under the phrase, " are the lawful owners thereof in fee simple absolute," which we  are  inclined to  think amounts to such a covenant. Our  statute covenant of title, embraced in the words " grant, bargain and sell," seems to have been left out of the deed.

The deed tendered therefore, was not such a deed as the contract stipulates, and could not fulfill the mutual dependent covenant therein, and could not be the ground-work of a suit to rescind, it not amounting to a performance, or an offer to perform on the part of the vendor.    It is not a literal nor even a substantial compliance with the terms of the contract.

Another objection equally fatal to the offer of performance by the vendor, is found in the fact, that the contract, nowhere

imposes a forfeiture on default in any of the payments, and therefore, the vendor before he could rescind, should put the vendee in the same condition, as before the making the contract. Had the deed tendered, been such an one as the contract required, the vendor, in addition should have returned the notes given for the purchase money and the several advances of money, or at least have offered to return them, before he could be permitted to rescind. This is understood to be the universal rule in such cases. The party against whom a rescision is sought, must be placed *in statu quo.* 1 Hilliard on Vendors, 33, and *seq.* 1 Sug. on Vendors, 306 ; *Johnson* v. *Jackson*, 27 Mississippi, 498 ; *Buchenan* v. *Horney*, 12 Ill. R. 336.

Time not having been made of the essence of this contract by the express stipulation of the parties themselves, nor by the nature of the contract itself, or from the conduct and circumstances of the parties and no gross *laches* or vexatious delay changing the relative situation of the parties, or one of them, affecting the character or justice of the contract, courts of equity have not hesitated to decree a specific performance. 1 Sug. on Vendors, 306 ; 2 Story Eq. Jurisprudence, 102. The doctrine of equity is compensation, not forfeiture. *Morgan* v. *Herrick, ante,* 481 ; *Andrews* v. *Sullivan*, 2 Gilm. R. 327.

It is true in this case, the property, during this delay of payment, had greatly increased in value, but it must be observed, that the appreciation took place before the receipt of the payment of the second of May, 1855, and the entertaining the proposition to take Brooklyn property in August following. In justice then, the real delay, should be computed from July, 1855, up to October 8, of that year, the date of the tender of the purchase money, about three months. This is all the delay shown to be without the consent, and in defiance of the vendor, and it does not seem to us, to be vexatious or unreasonable under all the circumstances. The vendee was very much embarrassed and struggling to make his payments. The vendor was unusually indulgent, and should not now desire to convert his generous forbearance into seeming injustice and oppression. He has the vendee's money, and his negotiable notes and has been offered in good faith, the whole amount due on the contract, and which he will receive before the execution of this decree. Receiving the payment on the contract in May, 1855, manifested not only the vendor's consent to the previous delay, but also his understanding at least, that the contract was then in full force. It would neither be fair nor just, and would operate as a surprise and a fraud upon the vendee, to receive this payment on the contract, and then for the vendor to turn around, and without any previous warning or notice, exact the final payment to the

very ·day, on penalty of a forfeiture of all previous payments, and without tendering such a deed as he had contracted to execute and deliver. It would .be a harsh proceeding thus to drive him to the wall.

We are satisfied, the vendor could not rescind this contract without tendering such a deed, substantially, as the contract stipulated, and also returning or offering to return the advanced payments together with the notes.

The ground for rescinding, failing, the case is left on the question of the vendee's having shown such· a performance as will entitle him to a decree. Of this, we cannot doubt, and accordingly affirm the decree.

*Decree affirmed.*