# THOMAS WALLACE

*v.*

# DUDLEY McLAUGHLIN.

1. VENDOR—*declaring contract forfeited.* Although a contract for the sale of land reserves the right to declare it forfeited, and the right to retain the money already paid on the purchase in case the vendee fails to make prompt payment as the several installments of the purchase money fall due, still the vendor can not declare such a forfeiture where the land thus sold is incumbered, and he is unable to perform his part of the contract, by conveying a clear and perfect title according to the agreement.

2. Where the vendor has the reserved power of declaring a forfeiture, he can not do so, unless he is in a position, at the time, to compel a specific performance of the agreement.

3. DELAY—*in performing contract—as a bar to equitable relief.* Upon bill filed by a purchaser of land, to restrain a vendor from recovering land sold, and to be conveyed free from incumbrance, into the possession of which the purchaser had entered under the agreement, such relief will not be barred by his failure to make payments, by reason of the incumbrance on the land.

4. FRAUD—*misrepresentations.* Where a vendor falsely represents that his title is good and free from incumbrance, and thus induces the purchaser to forego an examination of the title, and the purchaser enters and makes payments and large improvements on the land before he learns of the incumbrances, and then refuses to make further payments on the purchase until the incumbrances are removed, he can not be held to be in default in making payments.

5. SPECIFIC PERFORMANCE—*defective title.* After the vendor has declared a forfeiture, and recovered in ejectment, the vendee may, notwithstanding the incumbrance, tender the balance of the purchase money, waive his right to insist upon a perfect title, and compel a specific performance of the agreement. It would be inequitable to permit the vendor to retain the money paid, to get the land with the valuable improvements placed thereon by the purchaser, and escape the payment of the taxes while occupied by the purchaser, and give the purchaser nothing but the use of the land. In such a case, it is equitable to decree that the purchaser pay the balance of the price agreed to be paid for the land, less the amount of the incumbrance, and to require the vendor to execute a deed with the covenants stipulated for in the agreement.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

This was a suit in equity, brought by Thomas Wallace, in the Will circuit court, against Dudley McLaughlin, for the purpose of enjoining the further prosecution of a suit in ejectment in that court, for the recovery of a certain tract of land sold by the latter to the former.

Messrs. RANDALL & FULLER, for the plaintiff in error.

Messrs. GOODSPEED & SNAPP and Mr. C. B. GARNSEY, for the defendant in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit in equity, to perpetually enjoin the defendant from the prosecution of an ejectment suit against the complainant, and from interfering with his possession in a certain eighty acres of land in Will county.

On the 30th day of December, 1856, the parties entered into a contract under seal, whereby McLaughlin agreed that if Wallace should first make the payments stipulated, he would convey to him the land, clear of all incumbrances whatever, by a good and sufficient warranty deed, in fee simple; and Wallace agreed to pay $1000, as follows: $50 cash in hand; $300 April 1, 1857; $325 April 1, 1858, and $325 April 1, 1859, with 10 per cent interest on all the payments, and to pay all taxes, with an express stipulation that in case of failure to make either of the payments, the contract should, at the option of McLaughlin, be forfeited and determined, and Wallace forfeit all payments made, and they should be retained by McLaughlin. B. W. Wallace was also a party to the contract, but subsequently sold his interest to Thomas.

Three notes were executed by B. W. Wallace and Thomas Wallace, for the three deferred payments, according to the agreement.

The payments made were, $50 at the time of the contract, $130 March 28, 1857; $90 April 20, 1857; $70 May 1, 1857;

$6.93 May 8, 1857, a prior tax on the land.  Soon after the purchase, the complainant went into possession of the land, and has remained in possession ever since; having paid all the taxes on the land during the time, and made improvements of the value of $1500.

At the time of the contract, the defendant had a wife who is now living—they then lived, and now live, apart, and have, since making the contract, except a week or two.

There were, at that time, two subsisting mortgages upon the land, made by the defendant: one to George L. Fohe, commissioner of school lands, and agent for the inhabitants of Will county, dated August 10, 1847, to secure payment of $101, with 8 per cent interest, five years after date, and one to Fernando C. Brown, dated August 11, 1847, to secure payment of $126.37, with 6 per cent interest, on August 11, 1851, which have ever since been subsisting incumbrances upon the land, except the last, which was released September 9, 1861.

The vendor assured the vendees, at the time of the purchase, that there was no incumbrance upon the land, and that there was no need of going to the recorder's office to examine, and they relied upon his word.

The vendor boarded with the vendees at the time, and for some four months after, the value of which boarding was forty dollars, which was intended to apply to the contract.  The vendor repeatedly said to the vendees, that he would not crowd them; at one time, that he never would, if they would pay the interest.

Complainant never heard of any incumbrance upon the land until after he had moved on it, and made all the payments above specified as made.  Three or four months after the last payment fell due, Mr. Osgood, for the vendor, applied for payment, and complainant made objection, on account of the defect in the title.  The vendor applied to the complainant for money, and, as complainant testified, he told the vendor he could not get any more money from him while these incumbrances were upon the land, to which defendant replied, "Pay me the $1000 and let them debts wag."  Defendant testified, he told Wallace

to pay the money to Osgood, and he would pay the school and Brown mortgages, and him the balance of the money, and he would give a deed; that Wallace told him he had paid too much on the land already, and never would pay any more.

November 22, 1861, the vendor made a written declaration of forfeiture of the contract for non-payment of the two installments of the purchase money, which fell due April 1, 1858, and April 1, 1859; and that all payments made thereon were forfeited to the defendant, and had the same recorded the next day. November 25, 1861, defendant commenced a suit of ejectment against the complainant, for the land, by service of a copy of the declaration and notice. December 14, 1864, verdict and judgment were rendered therein in favor of the plaintiff, McLaughlin. September 26, 1865, Wallace made a tender to McLaughlin, under the contract, of $1395, which was refused. May 29, 1865, the judgment in the ejectment suit was vacated, and a new trial granted. January 22, 1866, the bill in this case was filed.

These are the prominent facts in the case.

The first question that arises is, as to the right of the vendor to declare a forfeiture of this contract.

Laying out of view any objection to his doing so without some notice of his intention, after his conduct of forbearance and repeated expressions of indulgence to the vendees in making the payments, and without a surrender of the notes of the vendees, we are satisfied that he had no such right, because he was not in a condition to perform his own part of the contract.

During all the time, from the date of the contract to the declaration of forfeiture, the land was incumbered, and there was a contingent right of dower in it, so that the defendant could not make such conveyance as he had stipulated to do.

He was not in a position to compel a specific performance by the vendees. They contracted to pay for an unincumbered title, and they could not have been compelled to pay for such a title as this. And unless the vendor could have sustained a bill for a specific performance of the contract, he could not

rescind it. *Brown* v. *Cannon*, 5 Gilm. 174; *Bishop* v. *Newton*, 20 Ill. 175; *Murphy* v. *Lockwood*, 21 Ill. 611; *Gehr* v. *Hagerman*, 26 Ill. 438.

It is next to be considered, whether the complainant's delay in making the payments for this land, is a bar to the relief asked for. It is apparent that the cause of the delay was the existence of the incumbrances upon the land.

When a party contracts to give a title free from incumbrances, the purchaser is not bound to pay his money and receive a deed while incumbrances exist against the property. *Bishop* v. *Newton*, 20 Ill. 175. So the complainant was in no default, in not performing this contract. The time of payment was not made material by the contract, further than in case of default the contract should, at the option of the vendor, be forfeited. This option was not attempted to be exercised until November 22, 1861.

In the meantime, the complainant had gone into the possession of the land, and made his payments of some two hundred and thirty dollars before he had any knowledge of the incumbrance, and made large improvements, in the hope, doubtless, that the defendant would discharge the incumbrances; one of which was released September 9, 1861.

Three days after the forfeiture was declared, defendant commenced his ejectment suit for the possession of the land. Of course, after this, the defendant could not claim or expect that the complainant would make any further payment; and the complainant might well be indulged in awaiting the result of the suit, upon his rights. Finding, by that result, that his equities would not be considered in a court of law, he concluded to take such a title as defendant could give, and made the tender above named. This defective title he had a right to pay for and accept, but was not bound to do so, under the contract.

The claim of the defendant, on declaring the forfeiture, amounted to this: that he should have back the land and all the improvements that had been put upon it, and keep all the payments that had been made; that complainant should lose,

in addition, all the taxes he had paid; his only benefit being the possession of the premises he had enjoyed; the rent was put at two hundred dollars a year, but a proportional part of that would be on complainant's own improvements.

When the defendant found that he could not perform the contract on his part, and that, by reason thereof, complainant would not further perform, defendant's conduct had created such equities in respect to the land, that it properly required the aid of a court of equity to adjust them, and it was rather the duty of the defendant to have applied to such a court to adjust the equities of the parties, than to resort to a court of law to enforce his own unconscientious claim in the matter.

The defendant's fraudulent representations, that there was no incumbrance upon the land, thereby probably inducing the complainant to forego his attempted examination of the title, adds to the default of the defendant, and strengthens the complainant's claim for relief.

We think the circumstances of the case furnish a reasonable excuse for the delay that has taken place; that the complainant's claim for relief is conscientious, and that it should be granted upon payment of all the unpaid portion of the purchase money, according to the agreement, less the amount due on the mortgage to George S. Fohe, commissioner of school lands, described in the pleadings and proofs. Complainant should be decreed to pay the mortgage, and its payment by him should be charged upon the land.

The complainant's case, in addition to the relief prayed for, might entitle him to the further relief of a deed from the defendant, to the covenants of which he might have resort, in case the contingent right of dower should become absolute.

The decree of the circuit court is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*