### McALPINE *v.* UNION PAC. RY. Co.[1]

*(Circuit Court, D. Kansas.   January 30, 1885.)*

1. RAILROAD COMPANIES—CONSOLIDATION—PURCHASE OF LANDS—NOTICE OF EQUITIES.

    At the time of the consolidation of the Union Pacific, Kansas Pacific, and Denver Pacific Railway Companies, the consolidated company became invested and possessed of all the rights and privileges and property, real, personal, and mixed, of the constituent companies, subject to all liens, charges, and equities existing thereon, and took the same with full knowledge of those liens, charges, and equities. A contract for the sale of lands standing on the books of the Kansas Pacific Company is sufficient notice to the consolidated company to prevent it from being a *bona fide* purchase without notice. *Whipple* v. *Union Pac. Ry. Co.* 28 Kan. 474, distinguished.

2. SAME—CONTRACT TO EXCHANGE REAL ESTATE—SPECIFIC PERFORMANCE.

    Where officers of a railway company enter into negotiations and contract for an exchange of real estate, and the board of directors of the railway company subsequently authorize the exchange of the lands to be made, and the deed of the company to be properly executed and delivered to the party with whom the contract is made, upon the performance of certain conditions on the part of such party, and such conditions are afterwards complied with and performance of the contract tendered, specific performance will be decreed.

In Equity.   Bill for specific performance of contract for exchange of lands.   The opinion states the facts.

*James W. Mason, Henry Smith, John W. Day,* and *James A. Troutman,* for complainant.

*John P. Usher, A. L. Williams,* and *Charles Monroe,* for defendant.

FOSTER, J.   The negotiations for an exchange of real estate be-

[1] From the Kansas Law Journal.

tween the plaintiff and the officers of the Kansas Pacific Railway Company culminated on the twenty-eighth of June, 1878, in the following order of the board of directors of the company:

"Kansas Pacific Railway Company.    Extract from minutes of board of directors:

ST. LOUIS, June 28, 1878.

"*Pursuant to call of President:*

"Present—Messrs. Perry, Meier, Edgell, Treadway, Edgerton, and President Carr    The president presented a form of deed to Maria W. McAlpine, to 25¼ acres of land in Wyandotte county, in exchange for 2 70-100 (2.70?) acres of land at the landing, in Wyandotte county, and asked for instructions in regard to signing the same.    On motion of Mr. Meier, and seconded by Mr. Perry, it was resolved that the exchange of said lands be made, reserving the right of way therein, and the deed of the company be properly executed and delivered to Maria W. McAlpine, whenever the land to be conveyed by her has been released from the tax claim thereon, and a proper deed made for the same is delivered."

In my opinion this record of the board of directors measures and fixes the limits of the liability and obligation of the railroad company in this case.    It authorizes the deed of the company for the 25¼ acres of land to be delivered to McAlpine, whenever the land to be conveyed by her has been released from the tax claim thereon, and a proper deed made for the same.    It does not appear that McAlpine in terms accepted this proposition, but from the evidence and the action of the parties I think an acceptance may be fairly implied. In a conversation with Mr. Devereaux, the attorney of the company, McAlpine expressed the opinion that the best way for him to remove the tax claim would be to buy in the land at the ensuing tax sale, under the new law, which he subsequently did at an expense of several hundred dollars, and directly thereafter tendered performance of the contract.    The company in the mean time remained in the quiet use and occupation of the ferry tract, (the title to which, subject to a disputed tax claim, was vested in Maria W. McAlpine.)    I think, from the evidence in the case, this removal of the tax claim was made by plaintiff because of the requirement of the company, and may be regarded as part performance of the contract.    At the time of making this contract the Kansas Pacific Railway was in the hands of receivers, but their rights were merely temporary possessory rights, the title of the property remaining in the company, and at the termination of the receivership I presume the possession was restored to the company.    Lewis and Burnham, as trustees, held a mortgage on this 25¼ acres, which the parties agreed was to be released, and the deed which Mr. Carr, the president, presented to the directors, was transmitted to him with such release by Mr. Devereaux, and I think a fair construction of that order is that McAlpine was to have a clear title to the land.

In May, 1879, a consolidated mortgage, as it is called, was made by the Kansas Pacific Company to Gould and Sage, as trustees, cov-

ering the 25¼ acres, and in January, 1880, the consolidation of the Union Pacific, Kansas Pacific, and Denver Pacific Railways was made, and together formed the defendant company. Of course the rights of Gould and Sage cannot be adjudicated in this case, as they are not parties; but it does appear that at the time of making said mortgage this order of June 28, 1878, was a matter of record on the books of the company, and unrevoked. McAlpine had got possession, rightfully or wrongfully, of the 25¼ acres, and the company was in the use of the ferry tract. Under this state of facts, it is claimed by plaintiffs that Gould and Sage took with notice of their claim.

The Kansas Pacific Company is not made a party to this suit, and, assuming this to be a valid and subsisting contract as to the 25¼ acres, what are the liabilities of the defendant company in this matter? To determine that question we will have to refer to the articles of consolidation. In article 8 each constituent company assigns and transfers to the consolidated company all its rights, privileges, property, real, personal, and mixed, all claims, demands, choses in action, and all property of every name and nature, etc., to be held, owned, and controlled by said consolidated company, as fully and completely as the respective parties hereto can own, hold, use, or control the same. Then it adds: "This assignment, transfer, sale, and conveyance is made to said consolidated corporation, subject to all liens, charges, and equities pertaining thereto."

Now it must be admitted that this land passed to the defendant company under this article. It is also true that all rights of the Kansas Pacific Company in this contract with McAlpine passed to the consolidated company, and it could demand of plaintiffs a performance thereof. And it seems to me it is equally apparent that defendant company does not stand as a *bona fide* purchaser without notice. With this land passed, also, to the defendant company all the rights and equities of the Kansas Pacific Company in this contract, and the right to receive the deed for the ferry tract in exchange for the 25¼ acres. The whole and entire right, title, and interest, and equities of the Kansas Pacific Company in and about these lands, and the right of action, passed to the defendant company. Can the defendant claim and receive the benefits of the contract, the full consideration, and repudiate the burdens and obligations attending it? I think not. Wat. Spec. Perf. § 512. This is quite a different case from *Whipple* v. *Union Pac. Ry. Co.* 28 Kan. 474. In that case it was sought by Whipple to charge the defendant company with a general judgment for unliquidated damages for a personal injury incurred before consolidation, and while the Kansas Pacific Company was operating the road.

This case is a contract appertaining to specific real estate transferred by the articles of consolidation to the new company, and while the first clause of article 10 exempts the new company from liability for outstanding debts, obligations, and liabilities of the constituent companies, the next clause reads as follows: "But nothing herein con-

tained shall prevent any valid debt, obligation, or liability of either constituent company from being enforced against the property of the proper constituent company, which by force of these articles becomes the property of the consolidated company." This clause expressly authorizes the enforcement of obligations and liabilities against the property of the constituent companies, which passes under the consolidation to the new company. Of course there can be no decree or money judgment rendered against the defendant company for the other land, but the plaintiff, Mrs. McAlpine, is entitled to a conveyance of the 25½ acres; and, inasmuch as she declares herself satisfied with a conveyance with usual covenants for quiet possession, I see no objection to granting such decree. *Reese* v. *Hoeckel,* 58 Cal. 281; Wat. Spec. Perf. § 424; *Wallace* v. *McLaughlin,* 57 Ill. 53. And it is so ordered.