HIGGINS *et al.* v. KENNEY.

Where a vendor contracts to sell land for which he holds only an executory contract of purchase, and stipulates with his vendee to convey a merchantable title by a warranty deed during a specified day in the future, upon the strength of which he receives a part of the purchase-price as earnest money, which the contract provides shall be retained as a forfeiture by the vendor in case of a breach of the contract by the purchaser, and is to be returned to the vendee if titles to the premises are not merchantable, such vendor can not retain the earnest

money after the day on which title is to pass, having himself failed to perfect his title so that he might convey to his vendee a merchantable title as provided by the contract. In the circumstances enumerated the vendee may, after the expiration of the time for making the deed, maintain an action for recovery of the earnest money without having paid or tendered payment of the balance of the purchase-price.

No. 4270. FEBRUARY 18, 1925.

Certiorari; from Court of Appeals. 31 *Ga. App.* 514.

In a suit to recover $300 with interest thereon, alleged to have been paid as earnest money in a contract of sale of land, the trial judge directed a verdict for the plaintiffs. The defendant excepted to that judgment, carrying the case to the Court of Appeals. The errors assigned were that the verdict was contrary to the law and to the evidence, and specially that the evidence failed to show willingness or ability of the plaintiffs to comply with their contract. The division of the Court of Appeals to which the case was assigned reversed the judgment of the trial court, all three of the Judges concurring. A motion for rehearing was granted, and after the rehearing the former decision was adhered to, one of the Judges dissenting. The opinion as rendered by the Court of Appeals was as follows:

"The evidence being in conflict upon material issues, and presenting questions for determination by the jury, the court erred in directing a verdict.

"LUKE, J. This case was commenced as a suit for the recovery of $300 earnest money paid on the purchase-price of real property, the plaintiffs alleging that, because of the seller's fault, the sale was not completed. Annexed to their petition is a copy of the written contract in question, which is referred to in the evidence as a 'sales ticket,' and which is in words and figures as follows: 'Savannah, Ga., May 10th, 1921. I have this day sold, subject to the existing leases thereon, as broker for myself, to Mrs. Helen Higgins and Mrs. J. P. Miller, for the sum of seven thousand dollars, the following property; 124-126 Waldburg Street E., being that two-and-a-half story frame dwelling located on the northerly side of Waldburg St., about thirty feet west of the northwest corner of Abercorn St. The terms of sale are as follows: Cash. The property is sold with the same reservations as contained in sales ticket to seller. Title to premises to be merchantable. Conveyance by seller is to be by warranty deed. Taxes, water rents, rents, and

insurance are to be prorated between the parties as of date of the passing of the title, which is to take place within July 1st, 1921. Time shall be of the essence of this contract, and earnest money may be retained in case of breach by purchaser. Sum of three hundred dollars has been paid on account of purchase-price; same to be returned if titles to premises are not merchantable. Frank J. Kenney, Broker. Accepted: Mrs. Helen Higgins. Mrs. J. P. Miller.' In their petition the plaintiffs allege the making of the contract, the payment of the earnest money as therein recited, their own ability, readiness, and willingness to complete the purchase in accordance with the terms of the contract, and the defendant's refusal so to do. Plaintiffs further allege that defendant never owned or acquired any title to the property in question, so as to be able to comply with his obligations; that for several days prior to July 1, 1921, during the last days of the life of the contract, the defendant was on a drunken spree, unable to attend to any business, and so absented and concealed himself that they were unable to find him, tender the balance of the purchase-price, or personally demand the conveyance; and that these things, rather than any express declaration on his part, constitute the defendant's refusal to abide by his obligations under the said contract. It is further alleged that, after the contract had been so breached by the defendant and had lapsed, they made demand upon him for a return of the $300 earnest money, and he refused to pay it. They prayed judgment against him for $300, with interest thereon at the rate of 7% per annum from July 1, 1921. In his answer the defendant admitted making the contract and receiving the $300 earnest money, but denied the remainder of the petition. Upon the trial the plaintiffs introduced evidence sufficient to make out their case prima facie as laid in the petition. With this statement, a further outline of their evidence here could serve no valid purpose. The defendant introduced in evidence another contract, or 'sales ticket,' evidently written upon one of the same printed forms as the contract in suit, and which differed from it in the following parts only: 'Savannah, Ga., May 9th, 1921. I have this day sold, subject to the existing leases thereon, as broker for G. Brown, to A. F. Breckwoldt, for the sum of fourteen thousand dollars, the following property, being those two frame dwellings located at the northwest corner of Abercorn and Waldburg Streets in the city of

Savannah, and being numbered 124, 126, 128 and 130 Waldburg St., East, said city. The lot having a frontage of about 60 ft. on Waldburg St., and a depth of about 55 ft. on Abercorn St. Reference is hereby made to deed to seller for better description of same. Subject to the reservations contained in deeds from Jacob E. Tussey to A. L. Harwood and Francis H. Gibbs, dated January 15, 1905. The terms of the sale are as follows: Cash. The seller or his daughter, Mrs. Ida Blumberg, is to have a lease of the upper apartment at 128 Waldburg St., East, for $40 a month for one year, commencing October 1st, 1921. Sum of two hundred dollars has been paid on account of purchase price; same to be returned if titles to premises are not merchantable. The seller is to pay my commission of $500.00. Frank J. Kenney, Broker. Accepted: G. Brown. A. F. Breckwoldt.' The defendant testified: that this contract was transferred to him by Breckwoldt; that upon plaintiffs learning that he held it they wanted to buy an interest in it; that he bought it for the purpose of speculation, and they wanted an interest in it for the same purpose; that, prior to this transaction, they had taken similar 'sales tickets' from him as to other property, had listed the property with him for resale, and in each instance he had sold the property at a profit to plaintiffs, this transaction being the first of their speculations to prove unprofitable. In the brief of evidence here his testimony appears in part in the following language: 'They would drop into my office from time to time to inquire, and finally, in the late spring of 1921, I heard of these two houses or apartments on Waldburg Street, owned by Mr. Brown, who was just on the stand. I closed the deal with them at $14,000 and signed the sales ticket—had the sales ticket drawn at $14,000. Mrs. Miller and Mrs. Higgins happened to drop in my office, I think, the next day. I told them about getting the sales ticket on this property, and they asked if I would let them have one of the houses. . . After some discussion I agreed to let them in on it. . . They paid a deposit of $300. I in the meantime had paid a deposit on the other. I gave them a sales ticket at $7,000. They immediately set a price on the property of $8,500, to try to make a profit of $1,500. I told them the price was a little steep; however, I would work on it. They had, as I recall, 45 or 60 days on the sales ticket,—I forget which. But in a few days we found we could not sell it at that price, and the sales ticket was

about to run out. In the meantime I had arranged to handle my part. I had retained the corner house. I had some money in the bank to pay my portion of it, and I had arranged to borrow $5,000 on the corner. I had hopes of arranging for them to get $2,000. I told them, "You realize if you don't get the money before the sales ticket expires, you lose the $300?" They said "The $300 we hate to lose, but we haven't got the money;" and then they instructed me to sell the sales ticket for $500 profit. The time was short and only a few days before the sales ticket would run out. I couldn't sell it for the $500 increase, and the result was that the sale fell through and both deposits were lost. The ladies came to my office a number of times after that, still looking for another speculation to get their money back. Things moved along, and no demand was made for the money. No letter was ever written to me, asking for the money. This thing dragged along for nearly a year; then Mrs. Kennedy and Mrs. Higgins had a little altercation. I don't know the details of it, but in any event the next thing I knew I was notified that the ladies had put their claim in the hands of Mr. Walsh to collect this $300 deposit. . . In regard to my being away from my office and under the influence of liquor; I was not continually on a spree. I was drinking at the time. I was arrested twice for driving an automobile when under the influence of liquor, but I was at my office practically all the time. The ladies saw me at the office only a few days before the sales ticket ran out, and at that time they authorized me to sell it at $7,500, or $500 profit. . . These ladies have never told me that they were ready to come across with the $7,000. They told me that they were not able to raise $2,000. . . That was between the 10th and 15th of June, 1921, along the middle of the month. They were not in my office every day—practically every day. I was not in a dreadful condition about that time. . . I was prepared to close out my part of the transaction. . . I was to pay $13,500 for the whole thing and sell the ladies the inside half for $7,000. I was ready and willing to close my end of the transaction upon their paying this $7,000. I had more than $7,000, as my bank statement will show.' The court directed a verdict in favor of the plaintiffs but, as the case was being tried by a jury, we think that, under all the evidence as above indicated, it was within their province, and within their province alone, to say on which side of the

case the truth lay. If, as contended by the plaintiffs, they really and in good faith endeavored to complete the purchase contemplated by their contract, and were ready, willing, and able to do so, and were prevented from so doing solely by reason of the defendant's fault in purposely absenting or concealing himself from them, or in failing to acquire a merchantable title to the property he was to convey, then they are entitled to recover. But if, as contended by the defendant, the failure to complete the purchase and sale in question was caused, not by reason of any breach of the contract on his part, but by reason of the plaintiffs' inability to pay at the time for performance; or because they could not or would not pay the purchase price, or if, without fault on his part, they failed to notify him during the time for performance that they were in fact ready, willing, and able to complete the sale in accordance with the terms of the contract, then the plaintiffs are not entitled to recover. The mere fact, if it is a fact, that plaintiffs undertook to sell their contract during the time for performance, would not, of itself alone, deprive them of their contractual right to perform it themselves after having failed to sell it. Evidence as to that matter is relevant only in so far as it may help the jury to arrive at the real truth of the case touching the material issues in the case. The same principle applies with equal force to the defendant's unsuccessful attempt to sell the other half of his contract with Brown, the real owner of the property. All parties had, as a matter of law, the unquestioned right to sell, or offer for sale, whatever interest they owned in the property, as well as the right to acquire a greater interest therein for the sole purpose of reselling the same at a profit. The plaintiffs would now lay great stress upon the uncontradicted fact that the defendant never owned or acquired a merchantable title to the property he contracted to sell to them, insisting that the case is analogous to one in which the seller executes a bond for title and takes the purchaser's promissory notes for the unpaid part of the purchase-price. The two cases are not, however, analogous. Under all the facts of the instant case, the only issue as to this point is as above stated. In so far as the defendant's lack of title affected or controlled the conduct of the plaintiffs at the time of the transaction, it should affect or control the outcome of this case upon the trial, but no further than that. Cases should never turn on mere afterthought, nor should a party's proper forethought

ever be unavailing; but which is which, under the conflicting evidence in this case, is a question for the jury, and not for the court. Let them answer by their verdict upon the next trial."

In a petition for the writ of certiorari, error is assigned upon the decision of the Court of Appeals, as follows:

(a)  "The Court of Appeals erred in holding: 'The evidence being in conflict upon material issues, and presenting questions for determination by the jury, the court erred in directing a verdict.' "

(b)  "Your petitioners further specify as error by the Court of Appeals its holding as set forth in the opinion as follows: 'The court directed a verdict in favor of the plaintiffs, but, as the case was being tried by a jury, we think that, under all the evidence as above indicated, it was within their province, and within their province alone, to say on which side of the case the truth lay. If, as contended by the plaintiffs, they really and in good faith endeavored to complete the purchase contemplated by their contract, and were ready, willing, and able to do so, and were prevented from so doing solely by reason of the defendant's fault in purposely absenting or concealing himself from them, or in failing to acquire a merchantable title to the property he was to convey, then they are entitled to recover. But if, as contended by the defendant, the failure to complete the purchase and sale in question was caused, not by reason of any breach of the contract on his part, but by reason of the plaintiffs' inability to pay at the time for performance, or because they could not or would not pay the purchase-price, or if, without fault on his part, they failed to notify him during the time for performance that they were in fact ready, willing, and able to complete the sale in accordance with the terms of the contract, then the plaintiffs are not entitled to recover.' Your petitioners say that in view of the uncontradicted evidence in said case that the said defendant never owned or acquired a merchantable title to the property in question, your petitioners were entitled to a verdict as directed by the trial court, both as a matter of law and as a matter of contract under the provision of the contract that said sum of $300.00 should be returned to your petitioners if the title to the premises was not merchantable."

(c)  "And your petitioners say that by reason of the unmerchantability of the said title they were entitled to a verdict without regard to evidence upon other matters which were in dispute."

(d)  "Your petitioners further allege and specify as error by the Court of Appeals as contained in the following excerpt from the opinion of the court:  'The plaintiffs would now lay great stress upon the uncontradicted fact that the defendant never owned or acquired a merchantable title to the property he contracted to sell to them, insisting that the case is analogous to one in which the seller executes a bond for title and takes the purchaser's promissory notes for the unpaid part of the purchase-price.  The two cases are not, however, analogous.  One grows out of a mutually complete contract of sale at the pleasure of the optionee.'  Your petitioners say that the error of the Court of Appeals consists in misconstruing the legal effect of contract of sale in this case, which is not in any respect an option but is a contract for the sale of land which in all legal essentials is the same as an agreement or bond for title.  The said contract was an agreement that within July 1st, 1921 (time being of the essence of the contract), that said defendant should convey by warranty deed a merchantable title to said premises for the sum of $7000.00, $300.00 of which was paid on account at the execution of the contract, and your petitioners say that the law governing this case is the same as where the seller executes a bond for title and takes the purchaser's promissory notes for the unpaid part of the purchase-price, and that the court erred in holding that they are not analogous cases."

(e)  "Your petitioners further specify as error by the Court of Appeals its decision as set forth in that portion of the opinion of the said court reading as follows:  'Under all the facts of the instant case, the only issue as to this point is as above stated.  In so far as the defendant's lack of title affected or controlled the conduct of the plaintiffs at the time of the transaction, it should affect or control the outcome of this case upon the trial, but no further than that.  Cases should never turn on mere afterthought, nor should a party's proper forethought ever be unavailing; but which is which, under the conflicting evidence in this case, is a question for the jury, and not for the court.  Let them answer by their verdict upon the next trial.'  Your petitioners say that the Court of Appeals erred in holding that they have no right to set up as a defense the lack of title in the defendant unless that lack of title affected or controlled the conduct of the plaintiffs at the time of the transaction; and your petitioners show that there is no evidence

raising an estoppel against your petitioners from setting up said lack of title, and that the mere fact that they never set up this lack of title until they filed suit did not preclude them from urging same. And your petitioners further say upon this assignment of error that this decision of the Court of Appeals, Division No. 1, is directly opposed to the decisions of Court of Appeals of Georgia, Division No. 2, in cases of *Carter-Moss Co.* v. *Lomax,* 30 *Ga. App.* 718 (8); *Drew* v. *Breedlove,* Id. 722 (3), and *Union Brokerage Co.* v. *Beall,* Id. 748 (1 and 2), in which cases it was held that the refusal by a purchaser to accept delivery of goods sold, upon one ground, did not prevent him from urging other grounds unless the opposite party had been placed in a situation where he would suffer injury if the vendee were not held estopped."

The writ of certiorari was granted, and the case is now for decision upon the assignments of error alleged in the petition for certiorari.

*McIntire, Walsh & Bernstein,* for plaintiffs in error.

*Travis & Travis,* contra.

ATKINSON, J. The evidence demanded a finding that the contract was entered into, that the earnest money that was sued for was paid by the vendees (plaintiffs), and that the vendor (defendant) did not ever acquire a merchantable title that he could convey to the vendees. A controlling question made by the assignments of error in the petition for certiorari is, can the vendor in the circumstances above enumerated retain the earnest money? Properly construed, the contract was not for an interest in the prior executory contract held by the vendor for purchase of the land, but was an unconditional contract to sell and convey by a warranty deed a merchantable title to the land, subject to "existing leases" and specified "reservations," the passing of such title "to take place within" a named day, time being "of the essence of the" contract, the earnest money to be retained by the vendor "in case of breach" by the purchaser, and to be returned to the purchaser "if title to the premises are not merchantable." In Wells, Fargo & Co. *v.* Page, 48 Oregon, 74 (82 Pac. 856, 3 L. R. A. (N. S.) 103), Benson and Hyde contracted to sell Gilbert certain land which they did not own at the time the contract was made, but which they promised to acquire and convey. It was provided that Gilbert should pay for the land as it should be conveyed to him in parcels,

and that he should deposit in bank a specified sum to secure his performance of the contract by him, which should be forfeited to Benson and Hyde in case he should fail to comply with the terms of his agreement. Gilbert made the deposit and paid for parcels of the land as title was acquired, and conveyed by Benson and Hyde until a certain time, when, on account of damage to the timber by fire, Gilbert notified Benson and Hyde that he would not receive or pay for any more of the land and demanded the forfeit money from the bank. Thereupon Benson and Hyde, without attempting to acquire title to any more of the land, demanded the forfeit money from the bank. The bank, being in doubt, brought an equitable suit to compel the claimants to the fund to interplead. Gilbert and Benson and Hyde filed appropriate pleadings setting up their respective claims, and on the trial the money was decreed to be paid over to Gilbert. On appeal it was held: "A vendor who, at the time of contracting to sell real estate, has not perfected his title to it, can not claim a forfeit deposit by the vendee to secure performance on his part upon his repudiation of the contract before the time of performance arrives, unless he shows that he has perfected his title so as to be in a position to perform his own agreement."

In the opinion it was said: "The money in dispute was the property of Gilbert, and was deposited with the bank by him. He is therefore entitled to its return, unless Benson and Hyde have a cause of action against him for a default in the performance of the contract. He deposited the money as security for the performance of his contract, to be forfeited only in case of his default, and, whether it be regarded as liquidated damages, as security for actual damages sustained, or as a sum to be forfeited to the vendors in case of the vendee's default, is immaterial, unless he is liable for failure to comply with the contract. [Then follows a discussion of the evidence showing that Benson and Hyde did not acquire title to the land.] It thus appears that Benson and Hyde were at no time in a position, during the life of the contract, to require Gilbert to receive and accept the deeds, the delivery of which was made a condition precedent to the payment by him of the purchase-price and necessary to put him in default. They did not own, and could not have conveyed, or caused to be conveyed, the land which they had agreed to sell, and which Gilbert had agreed to purchase

and pay for.. It is contended, however, that the renunciation of
the contract, and the refusal of Gilbert to be bound by it, before
the time for performance had expired, excused them from tender-
ing the deeds or showing that they were in a position to complete
the performance of the contract.    Where either party to a contract
gives notice to the other, before the time for performance has
arrived, that he will not comply with its terms, the other is re-
lieved from averring or proving tender of performance in an action
thereon.    3 Page, Contr. § 1436.    Thus, where a vendor of real
estate has title or ability to perform, and the vendee repudiates
the contract before the time for performance has arrived, it is not
necessary for the vendor to aver a tender or offer to perform in an
action for breach of the contract, because such a step would be but
an idle and useless ceremony.    2 Warvelle, Vend. & P. 2d ed. §
757; North *v.* Pepper, 21 Wend. 636; Johnston *v.* Johnson, 43
Minn. 5, 44 N. W. 668.    But the waiver by refusal to perform goes
only to the formal matter of the presentation or tender of a deed
or demand of payment; and a vendor of real estate can not enforce
the contract against a vendee who is in default or has repudiated
it, unless he himself is in a condition to perform.    Sievers *v.*
Brown, 34 Or. 454, 45 L. R. A. 642, 56 Pac. 171; Hampton *v.*
Speckenagle, 9 Serg. & R. 212, 11 Am. Dec. 704; Bigler *v.* Morgan,
77 N. Y. 312; Gray *v.* Smith, 28 C. C. A. 168, 48 U. S. App. 581,
83 Fed. 824; Mix *v.* Beach, 46 Ill. 311; Wallace *v.* McLaughlin,
57 Ill. 53; Peck *v.* Brighton Co., 69 Ill. 200; Birge *v.* Bock, 24
Mo. App. 330.    In Sievers *v.* Brown, supra, the vendee refused to
pay the first instalment due on the contract, and the court said that
his default did not authorize the vendor to declare a forfeiture until
he himself was ready and able to convey the premises according to
the terms of his bond.  .  .    We are of the opinion, therefore, that
Benson and Hyde are not entitled to the money in dispute, because
they have not shown that they were able to perform the contract
on their part.    Gilbert's repudiation of the agreement before the
time for performance had arrived would probably have excused
them from making a formal tender of a deed; but it did not relieve
them from showing an ability to comply with the contract, if they
intended to put him in default, so as to entitle them to the forfeit
money."

In Smith *v.* Lamb, 26 Ill. 396 (79 Am. D. 381), it was held that

a vendee may rescind a contract for the sale of land for the vendor's inability to convey, and recover the money paid on the contract, in an action for money had and received; and that in such a case the vendee need not tender the balance of the purchase-money in order to recover back the money paid on his contract, when the vendor admits that he has not the title and could not convey. See also cases to the same effect, cited in a note in 79 Am. D. 383. In Runkle v. Johnson, 30 Ill. 191 (83 Am. D. 191), it was held that a vendee desiring to rescind a contract for the sale of land need only show inability of the vendor to perform, and need not show tender of purchase-money on his part. In the opinion it was said: "Had the plaintiff brought his action for the first two installments before the time had arrived when the plaintiffs agreed to convey, it may be that the want of title would not have been a sufficient answer, for he might claim the whole time until the contract matured to acquire such title: Harrington v. Higgins, 17 Wend. 376. But the case is different where the party delays his action until the last payment is due, when the obligations under the contract become mutual and dependent, and the acts to be done in its execution are simultaneous. Then, the party who insists upon the performance by the other party must show performance on his own part, while he who desires to rescind the contract need only show non-performance, or an inability to perform by the other party: Doyle v. Teas, 4 Scam. 265. Indeed, this inability to perform is a good excuse on the part of the purchaser for not tendering the last payment,—for the law will not require the performance of a useless act,—and would be sufficient to entitle him to recover the money back if he had paid the first installments: Sir Anthony Main's Case, 5 Coke, 21. There can be no difference in principle, whether the party had never had the title, or, having had it, has parted with it. In either case, it might be competent for him to show that he still owned it in equity, and could control it for the benefit of the purchaser, so that he could, in fact, perform his covenant. But here it is admitted that the plaintiff never had the title which he professed to sell, and agreed to convey; and this was, at least prima facie, a breach of his covenant the moment the time arrived when he might be called upon to perform it, and this authorized the purchaser to renounce it altogether, and treat it as if it had never existed." See also Wright v. Dickinson, 67 Mich.

580 (35 N. W. 164, 11 Am. St. R. 602); Cleary v. Folger, 84 Cal. 316 (24 Pac. 280, 18 Am. St. R. 187); Seibel v. Purchase, 134 Fed. 484; 27 R. C. L. 653, § 413; 27 R. C. L. 626, § 380.

In *Pearson* v. *Horne,* 139 *Ga.* 453 (3 a) (77 S. E. 387), it was held: "Where it was alleged that the owner of the property sold it to a third person without affording to the plaintiff an opportunity to purchase it in accordance with the terms of the contract, and thus put it out of her power to comply with the contract, no tender on the part of the plaintiff was necessary." Applying the foregoing principles to the case under consideration, the earnest money was the property of the plaintiffs, because the undisputed evidence showed that the defendant did not ever have or acquire title to the property which he contracted to convey. It was essential that he should have such title at the time fixed by the contract for its conveyance, in order to give him any claim to the earnest money which he received as a part of the purchase-price. As he did not have such title, it was not necessary for the plaintiffs to have paid or tendered payment of the balance of the agreed purchase-price as a condition to a rescission or repudiation of the contract and a demand for the return of their money. As the evidence demanded a finding that the defendant did not have title which he could convey in pursuance of his contract, the trial judge properly directed a verdict for the plaintiffs, and the Court of Appeals erred in reversing that judgment. *Judgment reversed. All the Justices concur.*