JAMES MIX

*v.*

DAVID WHITE.

1. CONTRACT — *abandonment* — *allegations and proofs.* If an answer fails to set up an agreement to rescind or abandon a contract, such agreement cannot be relied upon under the proof.

2. EVIDENCE. To prove such a rescission or abandonment, the evidence must be reasonably clear and satisfactory. If loose, indefinite and uncertain, it will be insufficient.

3. MORTGAGE — *agreement.* An agreement, where lands are owned by M. and W. jointly, and the title is conveyed by M. to W., that he shall pay certain bills drawn to raise the money to enter the lands, and that if W. can sell the lands within sixty days, so as to pay M. $1,000 profit above all expenses, etc., he was authorized to do so, but if he could not, then the lands to be held by them jointly, to be disposed of as they might subsequently agree, does not constitute a sale by M. of his interest in the lands, and a mortgage by W. to secure the $1,000 to M. as purchase-money.

4. AGREEMENT. Such an agreement only authorized W., within the specified time, to sell the lands, and pay the indebtedness, if he could do so on such terms as would give M. $1,000 profits on the purchase.

5. JOINT OWNERS — *power to sell joint property.* Had the indebtedness not existed, to procure the money paid for the lands, W. would not have had power to sell the lands jointly awarded by him and M., although he held the title; but until the agreement was recorded, creditors and *bona fide* purchasers would be protected.

6. EQUITABLE RIGHTS OF THE PARTIES. Either party might have applied to a court of equity, if the other had refused, to compel a sale of such portions of the lands as would have been necessary to pay the money borrowed to enter them.

7. SALES. If W. had sold lands within sixty days, or before the agree-

ment was recorded, to *bona fide* purchasers, they would have acquired the title. But after that time they would have purchased at their peril, and be chargeable with notice.

8.   DECREE.   M. was entitled to half of the lands remaining unsold after the agreement was recorded, and was liable to pay one-half of the debts created to purchase the lands.   But if lands were afterwards sold and the proceeds applied to the payment of the indebtedness, such lands would not be liable to partition, but should be deducted from the division.   If W. has paid the debts, M. must contribute his half ; if he receives half of the lands, he must pay one-half of the debts, or, if less, in the same proportion.

WRIT OF ERROR to the Circuit Court of Macon county ; the Hon. CHARLES EMERSON, Judge, presiding.

This was a suit in equity, commenced at the May term, 1856, of the Circuit Court of Vermillion county, by James Mix, against David White, to enforce a specific performance of a contract relative to certain lands in that county.   The venue was afterwards changed to Macon county, where a hearing was had on the bill, amended bills, answers, cross-bill and answer thereto, replications, exhibits and proofs.

The agreement states that the parties, on the 14th of March, 1854, made a bill of exchange, drawn by White, and accepted by Mix, which was indorsed by White, Cunningham & Co., at four months, for the sum of $5,500 ; also, another of the same date, and running the same time, drawn by Mix, and accepted by White, and indorsed by the same firm as the other, and for the sum of $5,000, which had been renewed.   White agreed to pay the paper that Mix had become liable to pay, or might become liable to pay, in renewing the same.   That on the day of the date of the agreement, Mix had executed to White a conveyance, for seven thousand five hundred and eighty-two and seventy-two one-hundredths acres of land, in Vermillion county, Illinois, being lands purchased with the proceeds of the bills above described.   Also, that if White could sell the lands within sixty days, so as to pay Mix one thousand dollars profit, over and above all expenses, interest, etc., and the above described bills that were discounted for that operation, White was authorized to do so ; but if not sold within sixty days,

the lands were to be held by White on joint account, and be disposed of as they might afterwards agree. This agreement bore date on the 16th day of September, 1854, and was recorded on the 26th day of December, 1855, in the proper recorder's office.

The bill was exhibited at the May term, 1856, and was amended at the following October term. The amendment alleged that White had become insolvent, and had made an assignment of all of his property, including the lands in controversy, to Dunn, Walker and Freeman, who were made parties defendant. They answered this bill, and admitted the execution of the agreement, and insisted that Mix was only entitled to one thousand dollars, with interest on the same, by virtue of the agreement of the 16th of September, 1854. They also admit, that none of the lands were sold within the sixty days from its date, but they allege that White had afterwards sold a portion of the lands, but claim that he had not received from such sales the amount of the original purchase-money and interest. At the April term, 1857, complainant further amended his bill, by alleging that divers creditors of White had attached his interest in the lands, after the institution of the suit, and they were all made defendants to the bill.

On the 5th of November, 1858, the trustees and White's attaching creditors filed a cross-bill against Mix, in which it was alleged that he had for a long time treated the lands as belonging to White, and had acquiesced in the disposition he had made of them, and had claimed that White should account to him for the $1,000 mentioned in the agreement. That Mix had waived all claim to the lands. Mix filed his answer to the cross-bill, denying all material allegations, to which a replication was filed.

It appears that White conveyed a portion of the lands in controversy to T. J. Morton, to secure a debt, which was afterwards paid, and the lands reconveyed to White. McCrea testifies to a settlement between White and Mix, about the 15th or 20th of March, 1856. He thinks the settlement related to this land transaction, and resulted in an agreement that White was

to pay Mix one thousand dollars, which was to be a settlement of the matter.

On a final hearing of the case, the court rendered a decree in favor of complainant for $1,460.07, to reverse which, complainant prosecutes this writ of error.

Mr. C. BECKWITH, for the Plaintiff in Error.

Mr. A. J. GALLAGHER, for the Defendant in Error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

There is no allegation in the cross-bill or answers to the original bill that a settlement had been made, or that the contract had been abandoned, by the parties. The want of such an averment in the pleadings is sufficient to exclude McCrea's evidence as to a settlement from consideration in the case, as there is no averment in the pleadings that there had been a settlement, even if his evidence was clear and explicit. But when it is examined, it is found that he only gives his impressions of what was said and done, with but few facts. He admits that he only heard a part of the conversation, and that he may have received his impressions of the conversation from White. Taken altogether, it is too loose and unsatisfactory to establish an agreement to waive or abandon the contract. To have that effect, evidence should be reasonably clear and definite, and, at least, satisfy the mind that such was the intention of the parties. But this evidence falls far short of such weight. At most, it but raises a doubt whether Mix designed to give up all claim to the lands, and receive one thousand dollars, in lieu of his interest in them.

It is, however, insisted that the agreement of the 16th of September, 1854, although not in terms, is in law a transfer of all the rights of Mix in the lands, to White, and operates as a mortgage to secure the payment of one thousand dollars to him. Not being a mortgage in form, we must look beyond the agreement itself to determine whether it is different from

what it purports to be. From the evidence, we see that the parties entered into an agreement to purchase government lands, and to sell them on spéculation, and divide the profits, after defraying the expenses. For the purpose of raising a capital, the bills referred to in the agreement of the 16th of September, were drawn, indorsed and negotiated, the money realized, the lands entered, with the money or warrants purchased for the purpose, in the name of Mix, who, it seems, gave more of his personal attention to the business than White. The money, thus borrowed, remained unpaid, and as may be supposed, White was desirous that the bills should be paid, as his firm were liable, and may have given the greater portion of the credit upon which the money was procured. Be this as it may, Mix held the legal title to the lands, one-half of which was his absolute property, and the other half in trust for White. They had an equal interest in the lands, and were equally liable for the payment of the money borrowed to make the purchase.

It nowhere appears that White was indebted to Mix, or that White purchased Mix's interest in the lands, so no reason is perceived why a mortgage should have been given to Mix. But from the agreement itself, it seems to have been the design of the parties to confer power on White, out of the proceeds of sales of the lands, to pay off the bills upon which the money had been obtained, provided White could sell the lands for such a price as would take up the bills, and pay Mix one thousand dollars profit within sixty days, but if that was not done, then the lands were to remain on joint account, to be disposed of according to future agreement between the parties. Owning the lands jointly, as they did, this agreement operated as a license or a power for White to sell Mix's interest in the lands upon the terms and within the time specified, and if not thus sold, the power ceased, until it was renewed by a supplemental agreement.

Had this indebtedness not existed, it would be perfectly apparent that White could not have sold Mix's interest in the lands without his consent, notwithstanding he held the legal

title. Had he in such a case attempted to do so, it is obvious that equity would have restrained him; or had a purchaser taken a conveyance with notice of his rights, he would not have acquired a title. Nor do we perceive that the fact that the bills were unpaid when the agreement was entered into, authorized White to sell without Mix's consent. He no doubt held in equity Mix's interest as a security against his liability to pay the bills. And it may be that either party might have applied to a court of equity to subject the lands to the payment of the money with which they were purchased. Their rights were equal, and their liabilities reciprocal, when the agreement was entered into, and it seems to us they have made no change in such rights. We are therefore of the opinion that this agreement was neither in form nor by operation of law, a mortgage, or a sale by Mix to White. That after executing the agreement Mix retained the same interest in the lands that he previously held.

If, however, White made sales before the expiration of sixty days, or before the agreement was recorded, to *bona fide* purchasers without notice, they took the title. But after it was recorded it became notice to the world, and persons purchasing after that time, took the title subject to Mix's rights in the premises. And the same is true of White's creditors. They could only acquire White's half of the land. After the agreement was recorded, it was the duty of all persons dealing with the lands to inquire and inform themselves whether White had a different interest from that appearing by the agreement. Failing to do so, they acted at their own hazard. It then follows that Mix is entitled to one-half of the lands remaining unsold after the agreement was placed upon record. But if the bills were paid out of the proceeds of sales of the lands, then the lands thus sold should be deducted, as it is but equitable that Mix should contribute his full share to the payment of these debts. Or if White, out of his own means, paid the bills, then Mix should contribute his proportion towards their payment, and if he retains one-half of the lands he should pay one-half of the debt, or in the same proportion.

31 — 36 ILL.

The decree of the court below must be reversed, and the cause remanded.

*Decree reversed.*