# Henry A. Mix

*v.*

# Melville Beach et al.

1. Practice in chancery—*no summons necessary on the filing of a supplemental bill.* Upon the filing of a supplemental bill in chancery it is not necessary, under our practice, that a summons should issue, nor an appearance be entered before a *pro confesso* order can be entered.

2. Same—supplemental bill—*is in effect but an amendment of the original bill.* A supplemental bill is in effect but an amendment by which new matter, which has transpired since the filing of the original bill, is brought into the case, and it forms a part of, and is tried with the original case.

3. It is not error to require a defendant already in court by service, to answer a supplemental bill, and on his failing to do so, to render a decree *pro confesso* to such supplement.

4. Chancery—*specific performance—forfeiture.* As a general rule, there must be mutuality in agreements, to enable the parties to place each other in default.

5. Where a vendor gives a bond for a deed to be executed upon the payment of the final instalments, and time is of the essence of the contract, he cannot declare a forfeiture for the non-payment of the last instalment, unless he himself has a title and is in a condition to fulfill his obligation by making a deed.

6. Parties—*joinder of.* In a suit by a purchaser of land for specific performance, the administrator of the vendor is a proper party, having an interest in holding a lien upon the premises, until the purchase money is paid ; so, also, are the heirs of the vendor, for they may have been bound in such covenants by the agreement of sale as would charge their inheritance.

| | |
|---|---|
| 46 | 311 |
| 35a | 652 |
| 46 | 311 |
| 152 | 378 |
| 46 | 311 |
| 87a | 69 |
| 46 | 311 |
| 89a | 1452 |
| 46 | 311 |
| 91a | 5303 |
| 46 | 311 |
| 190 | 4229 |

WRIT OF ERROR to the Circuit Court of Lee county; the Hon. W. W. HEATON, Judge, presiding.

This was a suit of chancery, commenced by the defendants in error in the Circuit Court of Lee county, against the plaintiff in error, and Josiah B. Williams. The bill alleges, that on the 16th day of September, 1848, Josiah B. Williams entered at the land office at Dixon, Illinois, the N.W. quarter of section 35, township 22 north, range 11 east, of the 4th P. M., in said Lee county, with other tracts of land; that on the first day of January, 1855, Williams, still being the owner of the land, sold, or agreed to sell, the same, together with several other tracts of land in the counties of Lee, Ogle and Winnebago, to Henry A. Mix; on the twentieth day of January, 1855, Mix entered into a written contract with one Jacob W. Thayer, whereby he agreed to sell and convey the land to Thayer for the sum of $1,600; that sometime in the summer or fall of the same year, one John E. Pearl bought the land of Thayer; that on or about the twentieth day of September, 1855, Thayer paid Mix for the land the said sum of $1,600, and interest, whereby he fully complied with the conditions of the contract on his part; that John E. Pearl, who had so bought the land, and was entitled to receive a deed therefor, was indebted to Mix in the sum of $675; that in order to secure the payment thereof, it was arranged between Mix and Pearl, that instead of receiving a deed for the land, Mix should make a contract with Pearl, whereby Pearl should receive a deed for the land when he paid the $675, with interest at ten per cent. per annum; and that Pearl agreed to pay the same as follows: $256 66, December 20, 1855, and $418 34 December 20, 1856, upon the payment of which Mix agreed to convey the land to Pearl, in accordance with the terms of a written contract entered into between them.

On the 28th day of September, 1855, Pearl assigned the contract and sold his interest in the land to one James W.

Johnston, for the sum of $2,750, and received full payment therefor, as appears by a written assignment indorsed on the back of the contract.

On the thirteenth day of October, 1855, Johnston, by written agreement of that date, bargained and sold the land to Melville Beach. On or about the 13th day of October, 1855, Beach entered into possession of the land, and has broken, fenced and put it under cultivation, and has continued in possession ever since, of which Mix and Williams had notice. That the improvements made upon the land by Beach are worth $800.

James W. Johnston died February 23, 1856, intestate, leaving his widow, Margaret Johnston, (now Margaret Phelps,) and Henry, Harriet, James and Adelia Johnston, together with Edgar Johnston, infant heir-at-law of his estate; that Edgar died intestate, September 3rd, 1857, leaving Margaret, his mother, and Henry, Harriet, James and Adelia, his brothers and sisters, and heirs at law.

Melville Beach, at the November term, 1859, of the Circuit Court of Lee county, filed his petition, praying that a conveyance might be made to him, and at the same term it was decreed by the Court that the Master in Chancery should, by a proper deed of conveyance, convey all the right, title and interest of the heirs of James W. Johnston, in the land, to Beach, and on the 9th of February, 1860, the Master in Chancery, in pursuance of such decree, made, executed, and delivered to Beach a deed for the premises. Sometime in the summer of 1860, Williams visited Lee county, and became acquainted with the value of the land, and the improvements made thereon, and refused to convey the same to Mix or his assigns, and Mix refuses to convey to the complainants or either of them, or refund the money they have paid for the same. This suit was brought to compel a performance of the contract on the part of Mix, which resulted in a decree for the plaintiff.

40—46TH ILL.

The defendant brings the cause to this court, and asks the decree be reversed.

Messrs. Edsall & Crabtree, for the plaintiff in error.

Mr. John V. Eustace, for the defendants in error.

Mr. Justice Walker delivered the opinion of the Court:

The defendants in error filed their bill in the Circuit Court of Lee county, in January, 1861, against plaintiff in error and Josiah B. Williams. Plaintiff in error answered, to which there was a replication. In December, 1865, and before a hearing was had, complainants obtained leave, and filed a supplemental bill. A rule was taken upon defendants for an answer to the supplemental bill, but none was filed within the time prescribed, and it was taken as confessed. Upon filing the supplemental bill no summons issued, nor was there any appearance entered to it before the *pro confesso* order was entered. This is assigned for error.

According to the ancient and strict rules of English chancery practice, such may have been the practice, and authorities may no doubt be found, declaring such to be the rule, in some of the States of the Union, where that practice has been adopted. But such a practice has, so far as we are informed, never obtained in this State. On the contrary, where the defendant is once brought into court, he is required to be present and take notice of every step taken in the progress of the cause. And a supplemental bill, being in effect but an amendment, by which new matter which has transpired since the filing of the original bill is brought into the case, forms a part of, and is tried with the original case. And no greater reason is perceived why a defendant should be again summoned upon filing a supplemental bill, than when the original bill is amended. To require it, would involve expense, cause delay,

and could serve no useful purpose. No necessity exists for its adoption, and it is not error to require a defendant already in court by service, to answer a supplemental bill, and·on failing so to do, to render a decree. *pro confesso* to such supplement.

It appears, from the record, that Mix had purchased the land in controversy, with others, from one Williams, and held a contract for a conveyance of each quarter, that might be selected on making payment as provided. Mix subsequently sold this quarter to one Thayer, and he to Pearl, who sold to Johnston, and he to Beach. Thayer, having paid a portion of the purchase money at the time he sold to Pearl, surrendered his agreement for a conveyance to Mix, who gave an obligation to convey directly to Pearl, on the payment of $675, in two instalments, one of which was paid, and the other remained unpaid. The obligation for a conveyance contains this clause: "And it is expressly agreed by and between the parties, that a non-fulfillment on the part of said Pearl, in any part of the aforesaid undertaking, shall operate as a complete forfeiture of this contract." There seems to be no question that Beach has succeeded to all of Pearl's rights under the agreement; and that he went into and held possession of the premises. It does not appear that Pearl, Johnston or Beach, ever paid or tendered the last instalment; or that Mix ever tendered a deed, or did any act manifesting any intention to treat the contract as rescinded or otherwise at an end. On the other hand, it does appear that Mix had not procured a conveyance from Williams for this land, or was in a condition to convey, until after this suit was brought.

On the part of plaintiff in error it is claimed that there was a forfeiture of the contract, and that Beach has no right to insist upon its enforcement. It is true, the provision for a forfeiture is very general and comprehensive. But the question arises whether plaintiff in error was in a condition to insist upon its enforcement. As a general rule, there must·be mutuality in agreements to enable parties to place each other

in default. Before Mix could urge that the holder of his obligation was in default on the last payment, he should have been able and willing if required, to comply with his part of the agreement. Had it been an intermediate instalment, it might have presented a different question. But why should Beach pay his money to Mix, when the latter was then bound to convey, and had not received a deed, and for aught that appears never would be able to perform his part of the agreement. He had no legal title, and so far as we can see was not in a condition to compel a conveyance from Williams. He had agreed to convey when the last payment should be made, and when the time arrived he was not able to perform according to the terms of the agreement. He was then himself in default, and how can he claim that there was a non-fulfillment of the agreement until he was able to convey. Beach or his assignees were not bound to make this last payment, until a deed was made by Mix.

The payment of the last instalment, and the conveyance of the land were simultaneous and concurrents acts, and neither could demand a performance by the other, unless ready and willing to perform on his part. The holder of the bond for a conveyance was not bound to pay his money, and extend the time for Mix, to ascertain whether he could obtain a conveyance of the land. Hence he was not in default, and it cannot be said he had failed to fulfill his part of the agreement. Had Mix procured a conveyance and tendered a deed, or perhaps only notified Beach of the fact, and the latter had failed to make payment, then he would have been in default. The doctrine of equity is compensation, and not forfeiture. And in a case where, as in the present, the party claiming the forfeiture, was himself in default, or unable to perform his part of the agreement, a court of equity will not rescind the agreement. We are therefore of the opinion that the contract was not forfeited, and that plaintiff in error cannot set up the non-payment of the money, on the day, as an excuse for not

conveying, and to hold the large sum of money previously paid on the purchase.

It is, however, insisted that the proof does not sustain the case made by the bill; that it alleges that all of the purchase money had been paid; whilst the last instalment was still due. It is true, the bill does contain such an allegation, but alleges that the payment was made by Pearl or Johnston, but complainant coupled with the statement, an offer to pay any sum that may be found to be still unpaid. This offer, we think, gives the bill a double aspect, and claims relief in either case. If the money had been paid, he claimed he was entitled to relief; if not, he was willing to pay the balance, and was also entitled to the relief sought. The proof sustains the bill in this view of the case.

It is urged that Johnston's heirs were improperly joined as co-plaintiffs, as they had no interest in common with Beach. Beach had purchased from their ancestor, but had not paid for the premises. For ought that appears, they may have been, under the agreement by their ancestor, unable to collect the purchase money, unless the title was obtained; or, in such an event, they may have been bound by covenants which would have been a charge on lands they may have inherited from their father. If so, they would seem at least to have been proper parties. The administrator was a proper party, having an interest in holding a lien on the premises until the purchase money was paid. Whether indispensable as parties, or not, they seem to be proper parties. In this, no error is perceived. The decree of the court below is affirmed.

*Decree affirmed.*