Argued 5 Oct., decided 30 Oct., rehearing denied 4 Dec. 1905.

## WELLS v. PAGE.

3 L. R. A. (N. S.) 103 ; 82 Pac. 856.

VENDOR AND PURCHASER—TENDER—FAULT OF VENDEE.

1. A vendor of real property, who is prepared to carry out his part of the contract, need not tender a deed or make an offer to perform, before suing the vendee for a breach of his contract to purchase, after the latter has repudiated the agreement.

VENDOR AND PURCHASER—BREACH BY VENDEE—ABILITY TO PERFORM.*

2. A vendor of real property desiring to claim a forfeit deposited by the other party to a contract for the sale of such property, must show that he is prepared to perform on his side, notwithstanding the purchaser refused compliance before 'the time for completing the transfer.

From Multnomah : ARTHUR L. FRAZER, Judge.

Statement by MR. JUSTICE BEAN.

This is an interpleader suit by Wells, Fargo & Co. against James E. Page and others. On March 14, 1902, Benson and Hyde and W. H. Gilbert entered into a contract in writing for the sale by the former and the purchase by the latter of 8,280 acres of land in the State of Washington. Benson and Hyde had no title at the time the contract was made, but the land had been selected by them, or for their benefit, under the provisions of the act of Congress of June 4, 1897, permitting the surrender of lands within forest reserves and the selection of other lands in lieu thereof. Under the rules and regulations of the Interior Department, no title vested in the selectors of such lands until the selections were approved by the Commissioner of the General Land Office. None of the selections which Benson and Hyde agreed to sell to Gilbert had been so approved at the time the

---

*NOTE.—See note to this case in 3 L. R. A. (N. S.) 103, collecting authorities and pointing out an unusual feature of this case. In 30 L. R. A. 33-73, is an extensive note, Right to Rescind or Abandon Contract Because of Other Party's Default, in which note pages 43, 48-49 and 64-66.

REPORTER.

contract was made. This fact was recited in the agreement, and it was stipulated that, whenever the Commissioner should approve any of the selections, the title of the selector should be considered good and sufficient, and a deed from him, conveying all his interest and such as he might thereafter acquire, should be deemed a good and sufficient deed. It was further agreed that Gilbert should deposit with Wells, Fargo & Co.'s Bank in Portland $10,000, which should be retained and held by the bank as a forfeit to Benson and Hyde in case of the failure of Gilbert to comply with the terms of his agreement, and from which the last payments on account of the purchase price of the land should be made, if the terms of the contract were kept and performed by Benson and Hyde; and that, if default should be made by Gilbert in the performance on his part of any of the conditions of the contract, the agreement of Benson and Hyde to sell and his right to purchase any of the lands for which payment had not been actually made, should cease and determine, and the forfeit money should thereupon become the property of Benson and Hyde, and the bank should pay it over to them. It was also agreed that in addition to the forfeit money Gilbert should at all times have on deposit with the bank $10,000 with which to make the payments as they became due, and that when any of the selections should be approved, and Benson and Hyde should deliver to the bank a deed or deeds, in a certain form as agreed upon, conveying to Gilbert all the title, present and prospective, of the selectors, accompanied by evidence of the approval of the selections, the bank should pay out of the money deposited with it, exclusive of the forfeit money, to Benson and Hyde the purchase price. It was further stipulated that, if all the selections were not approved within one year from the date of the contract, it should be optional with Gilbert, either to cancel the contract or continue the same as to unapproved selections. Upon making the contract, Gilbert deposited with the bank the forfeit money as required, and also money with which to pay the purchase price of the lands as the deeds therefor should be delivered to it by Benson and Hyde; and thereafter, and prior to January, 1903, there were approved by

the Commissioner of the General Land Office selections covering 4,160 acres, which were conveyed to Gilbert and paid for by the bank. In September, 1902, the timber on the land mentioned in the contract was destroyed or injured by fire, and in January following Gilbert notified Benson and Hyde that he would decline to receive or pay for any more of the land, and demanded from the bank the return of the forfeit money. Benson and Hyde, without procuring or attempting to procure the approval of any more selections, or endeavoring to place themselves in a position to comply with the contract on their part, also demanded the forfeit money, and the bank, being in doubt, filed a bill in equity for a decree requiring Gilbert and Benson and Hyde and the defendant Page to interplead, paid the money into court, and was discharged from any further liability in the premises. Page's claim upon the forfeit money was settled, but Gilbert and Benson and Hyde filed appropriate pleadings setting up their respective claims, and upon a trial the money was decreed to be paid over to Gilbert, and Benson and Hyde appeal.

AFFIRMED.

For defendants and appellants, Benson and Hyde, there was an oral argument by *Mr. Albert Hawes Tanner,* with a brief to this effect.

I. Tender was unnecessary: *North* v. *Pepper,* 21 Wend. 636; *Gray* v. *Smith,* 28 C. C. A. 168 (48 U. S. App. 581, 83 Fed. 824); *Crary* v. *Smith,* 2 N. Y. 60; *Turner* v. *Parry,* 27 Ind. 163; *Gray* v. *Dougherty,* 25 Cal. 280; *Blunt* v. *Tomlin,* 27 Ill. 93; *Lyman* v. *Gedney,* 114 Ill. 408 (55 Am. Rep. 871, 29 N. E. 282); *Bucklen* v. *Hasterlik,* 155 Ill. 423 (40 N. E. 561); *Johnston* v. *Johnson,* 43 Minn. 5 (44 N. W. 668); *Hampton* v. *Speckenagle,* 9 Serg. & R. 212 (11 Am. Dec. 704); *Sweitzer* v. *Hummel,* 3 Serg. & R. 228; *McWilliams* v. *Brookens,* 39 Wis. 334; *Black* v. *Crowther,* 74 Mo. App. 484; *Galvin* v. *Collins,* 128 Mass. 525; *Curtis* v. *Aspinwall,* 114 Mass. 187 (19 Am. Rep. 332); *Carpenter* v. *Holcomb,* 105 Mass. 280.

II. The vendor of real estate may perfect his title at any time before the period fixed for the completion of the contract, and the fact that his title was incomplete at the time the contract

was made is immaterial: Sugden, Vend. & Pur. 8 Am. Ed. 396; Maupin, Marketable Title to Real Estate, 308, p. 741.

For defendant and respondent, Gilbert, there was an oral argument by *Mr. Harrison Gray Platt,* with a brief to this effect.

1. The evidence disclosed that Benson and Hyde could not make title to the lands which it is claimed Gilbert declared he would not accept. Gilbert is not liable in damages to Hyde and Benson because, as a matter of fact, Benson and Hyde were unable to comply with their part of the contract. The court will not mulct a party in damages for declaring that he would not accept and pay for property which the other party could not convey and deliver: *Bigler* v. *Morgan,* 77 N. Y. 312, 319; *McCann* v. *Albany,* 158 N. Y. 634, 639 (53 N. E. 673) ; *Sievers* v. *Brown,* 34 Or. 454, 460 (45 L. R. A. 642, 56 Pac. 171).

2. Where a party sells property which he is neither able to convey himself nor to compel a third person to convey, the purchaser, when he finds out the true state of facts, may repudiate the contract: *Brewer* v. *Broadwood,* L. R. 22 Ch. Div. 105; *Getty* v. *Peters,* 82 Mich. 661 (10 L. R. A. 465, 46 N. W. 1036) ; *Gerli* v. *Poidebard Silk Mfg. Co.* 57 N. J. Law, 432 (51 Am. St. Rep. 612, 30 L. R. A. 61, 31 Atl. 401) ; *Sievers* v. *Brown,* 34 Or. 454, 460 (45 L. R. A. 642, 56 Pac. 171).

3. The action of the officials of the Land Department of the United States in sustaining and rejecting the entries made on behalf of Hyde and Benson is presumed to be correct, being in performance of their official duty, until reversed or modified: B. & C. Comp. § 788, subds. 15, 20, 27, 34.

4. Even those courts which hold that an actual tender may be waived by a prior declaration that conveyance would be refused, expressly declare that to entitle a party to damages, who relies on such waiver, he must not only show the waiver, but he must also show that he was ready and had the present ability to convey according to the terms of the contract. Benson and Hyde alleged such ability, but entirely failed to prove it: *Nelson* v. *Plimpton Fire Proof El. Co.* 55 N. Y. 480; *Bigler* v. *Morgan,* 77 N. Y. 312-318; *Eddy* v. *Davis,* 116 N. Y. 247 (22 N. E.

362); *Baker* v. *The Bishop Hill Colony,* 25 Ill. 264; *Mix* v. *Beach,* 46 Ill. 311; *Wallace* v. *McLaughlin,* 57 Ill. 53; *Peck* v. *Brighton Co.* 69 Ill. 203; *Hale* v. *Cravener,* 128 Ill. 408 (21 N. E. 524); *Platte Land Co.* v. *Hubbard,* 12 Colo. App. 465; *Gray* v. *Smith,* 83 Fed. 824, 829 (28 C. C. A. 168); *Birge* v. *Bock,* 24 Mo. App. 330; 9 Cyc. 601.

MR. JUSTICE BEAN delivered the opinion of the court.

The money in dispute was the property of Gilbert, and was deposited with the bank by him. He is therefore entitled to its return, unless Benson and Hyde have a cause of action against him for default in the performance of the contract. He deposited the money as security for the performance of his contract, to be forfeited only in case of his default, and, whether it be regarded as liquidated damages, as security for actual damages sustained, or as a sum to be forfeited to the vendors in case of the vendee's default, is immaterial, unless he is liable for a failure to comply with the contract. It is shown by the record, and is admitted, that none of the selections which Benson and Hyde agreed to sell and convey to Gilbert, and which have not been accepted or paid for by him, had been approved by the Commissioner of the General Land Office at the time of the renunciation of the contract by Gilbert, nor were any of such selections thereafter approved during the life of the contract, or since, except one for 160 acres in May, 1903. All the other lands were either not open to selection, or had been abandoned by the selectors, or the selections had been rejected or suspended by the land department, or for some reason not approved, and there is no proof or showing that approvals could or would have been obtained but for the renunciation of the contract by Gilbert, except the mere opinion of Hyde, based on no substantial foundation, and for which he can give no sufficient reason. Of the land included in the contract 4,160 acres were conveyed to Gilbert and paid for, 240 acres were not open to selection and 40 acres were abandoned, leaving 3,840 acres, which it is claimed Gilbert refused to accept. Of this amount, the selection for 1,240 acres was rejected April 10, 1902, and was also included in the general order of November 21, 1902, suspending all

selections made by Hyde or in his name. The selection for 1,680 acres was suspended April 22, 1902, and was also included in the general order referred to, and this order, so far as the evidence shows, remains in full force and unrevoked. A selection of C. W. Clarke for 640 acres had been rejected prior to the making of the contract. An appeal was taken from the order of rejection and it was reversed on March 30, 1903, after the expiration of the time for performance. The selection of Clarke for 120 acres was not approved and the Commissioner called for additional evidence, and the selection for 160 acres was approved May 7, 1903. It thus appears that Benson and Hyde were at no time in a position, during the life of the contract, to require Gilbert to receive and accept the deeds, the delivery of which was made a condition precedent to the payment by him of the purchase price and necessary to put him in default. They did not own and could not have conveyed or caused to be conveyed the land which they had agreed to sell, and which Gilbert had agreed to purchase and pay for.

1. It is contended, however, that the renunciation of the contract, and the refusal of Gilbert to be bound by it, before the time for performance had expired, excused them from tendering the deeds or showing that they were in a position to complete the performance of the contract. Where either party to a contract gives notice to the other, before the time for performance has arrived, that he will not comply with its terms, the other is relieved from averring or proving tender of performance in an action thereon: 3 Page, Contracts, § 1436. Thus, where a vendor of real estate has title or ability to perform, and the vendee repudiates the contract before the time for performance has arrived, it is not necessary for the vendor to aver a tender or offer to perform in an action for a breach of the contract, because such a step would be but an idle and useless ceremony: 2 Warvelle, Vendors (2 ed.), § 757; *North's Admrs.* v. *Pepper,* 21 Wend. 636; *Johnston* v. *Johnson,* 43 Minn. 5 (44 N. W. 668).

2. But the waiver by refusal to perform goes only to the formal matter of the presentation or tender of a deed or demand

of payment; and a vendor of real estate cannot enforce the contract against a vendee who is in default or has repudiated it, unless he himself is in a condition to perform: *Sievers* v. *Brown,* 34 Or. 454 (56 Pac. 171, 45 L. R. A. 642); *Hampton* v. *Speckenagle,* 9 Serg. & R. 212 (11 Am. Dec. 704); *Bigler* v. *Morgan,* 77 N. Y. 312; *Gray* v. *Smith,* 83 Fed. 824 (28 C. C. A. 168); *Mix* v. *Beach,* 46 Ill. 311; *Wallace* v. *McLaughlin,* 57 Ill. 53; *Peck* v. *Brighton Co.* 69 Ill. 200; *Birge* v. *Bock,* 24 Mo. App. 330. In *Sievers* v. *Brown,* 34 Or. 454 (45 L. R. A. 642, 56 Pac. 171), the vendee refused to pay the first installment due on the contract, and the court said that his default did not authorize the vendor to declare a forfeiture until he himself was ready and able to convey the premises according to the terms of his bond. *Hampton* v. *Speckenagle,* 9. Serg. & R. 212 (11 Am. Dec. 704), was an action by a vendor to recover damages for the non-performance by a vendee of a contract to convey real estate which was incumbered in excess of the purchase price at the time the contract was made, but which incumbrances were not disclosed to the vendee. Before the time for performance arrived, the vendee denied having made the contract, and declared that he would not comply therewith. It was held that such renunciation by him excused the vendor from tendering a deed before bringing his action, but that, before he "would be entitled to recover damages, it was incumbent on him to show that it was not (sic) in his power to make a good title. He has averred in his declaration that he was ready to do all things necessary to be done on his part, and that averment cannot be supported, if he was unable to make title. If the incumbrances were of such a nature that the jury might be satisfied from the plaintiff's evidence that he could and would have removed them, had the defendant been willing to accept a conveyance, the case would fall within the principle of *McMurtie* v. *Bergasse,* and the plaintiff might recover. But the ability to discharge the incumbrances was a point which lay upon the plaintiff to establish beyond doubt. If he failed there, he could not be entitled to damages; but, if he satisfied the jury on that point, he might recover."

*Bigler* v. *Morgan,* 77 N. Y. 312, was likewise an action for the breach of an executory contract to exchange lands, and the court, speaking through Mr. Justice RAPALLO, says that, to entitle the vendor "to recover damages for a breach of the contract, he must show that he was ready and willing to deliver such a deed as the contract called for. The refusal of the defendant to perform, although it obviated the necessity of a formal tender of a deed, did not dispense with the necessity of showing that the plaintiff was able, ready and willing to perform; and ordinarily this requires that the deed called for by the contract should be prepared and ready for delivery." And after alluding to the distinction between an action to rescind a contract and recover back payments made thereon, and one to enforce it and recover damages, the learned justice continues: "However positively a vendee may have refused to perform his contract, and however insufficient the reason assigned for his refusal, he cannot be subjected to damages without showing that he would have received what he contracted for, had he performed." *Gray* v. *Smith,* 83 Fed. 824 (28 C. C. A. 168), was also an action of like character. The vendor did not have title to the property which he agreed to convey. Before the time for the completion of the contract, the vendee refused to abide by and repudiated it. The vendor claimed that such refusal excused him from showing his ability to perform. This position was thus disposed of by Mr. Justice GILBERT: "It is true that where the vendor of property, before the arrival of the time for the completion of his contract of sale or conveyance, disables himself from performing by disposing of the property to another, the purchaser may at once bring his action, and he need not aver or prove tender of the purchase money upon his part, nor his ability to carry out the contract; and, where either party to a contract gives notice to the other that he will not comply with its terms, the other is excused from averring or proving a tender of performance. But, in any case of action upon a contract, the elements of the plaintiff's damage must be certain, and the facts must exist from which it may be deduced that he has suffered loss. One

(48th Or.—6)

who makes a contract to sell property of which he has no title, nor the certain means of procuring title, presents no facts upon which damage to him may be predicated, if the purchaser withdraws from the contract. The pleadings and the findings in this case leave it uncertain whether the plaintiff could ever have acquired title to the Market street lot. So far as the performance of his contract was concerned, he was in no better attitude than one who has disabled himself from carrying out a contract of sale by selling the property to another."

We are of the opinion, therefore, that Benson and Hyde are not entitled to the money in dispute, because they have not shown that they were able to perform the contract on their part. Gilbert's repudiation of the agreement before the time for performance had arrived would probably have excused them from making a formal tender of a deed; but it did not relieve them from showing an ability to comply with the contract, if they intended to put him in default, so as to entitle them to the forfeit money.                          AFFIRMED.