## THROWER *v.* LOGAN *et al.*

Where a contract for the sale of land, signed by one party as vendor and
by another called the purchaser, contained a stipulation that "This
agreement is made subject to right of purchaser to investigate titles
to the property, and to decline to perform if title of the vendor be legally
insufficient and they fail to perfect the same within a reasonable time,"
and, after fixing times of payment by installment, provided further
that cash payment was to be made "when vendor complies with their
obligation to make satisfactory showing as to title," and where, in a
suit against the purchaser for a breach of such contract, it appears that
the vendors had only an option given by the real owner of the property,
and that the vendors did not acquire title to the property during the life
of the option, such vendors can not maintain the suit for a breach of
the contract, although it is alleged that the purchaser refused abso-
lutely to comply with the contract and renounced his obligation under
the same before the expiration of the option.

FEBRUARY 27, 1912.

Action for breach of contract. Before Judge Pendleton. Fulton
superior court. December 6, 1910.

The petition of James L. Logan, E. G. Black, and E. Rivers
against M. L. Thrower set forth the following facts: M. Haralson
Sr. secured a written option to purchase from J. Aldredge, the
owner, a piece of real estate on Peters street, in the city of Atlanta,
for the price of $50,000. Haralson then entered into a written
contract with petitioners, whereby the latter, in consideration of
their negotiating a sale of the property and bearing all expenses
incident thereto, were to have two thirds of the gross profits aris-
ing from such sale as they might make of the property within the
life of the option. E. Rivers Realty Company, acting as agents for
Logan, Black, and Rivers, negotiated a sale of the property to M. L.
Thrower for the price of $65,000. This sales contract, after re-
citing that it is between "M. L. Thrower (as Purchaser) and E.
Rivers Realty Co., Agents (as Vendor)," contained the following
stipulations: "This agreement is made subject to right of pur-
chaser to investigate titles to the property, and to decline to per-
form if title of the vendor be legally insufficient and they fail to
perfect the same within a reasonable time. . . Cash payment
to be made when vendor complies with their obligation to make
satisfactory showing as to title." E. Rivers Realty Company ten-
dered to Thrower a complete abstract of title to the property, in
order that he might have the title investigated, and later caused to
be tendered to him a bond for title, properly executed by Aldredge,

the owner, and also promissory notes covering the deferred payments, all in accordance with the terms of their contract of sale made with Thrower, but Thrower declined to receive the bond for title, or to execute the promissory notes; and "said Thrower, about the time said bond for title from James Aldredge was tendered to him, before that date and subsequent thereto, but before the expiration of said option, repudiated said sale and refused to carry out said contract, without reason." Thrower was fully advised, at the time he executed the contract for the purchase of the property, of the existence of the option referred to; was advised that E. Rivers Realty Company were acting as agents for petitioners, and that petitioners' right to said property rested upon their contract with Haralson. Haralson's option to purchase the property for $50,000 expired about four months after Thrower is alleged to have repudiated the sale to himself. The option having expired, petitioners seek to recover as damages from Thrower two thirds of $15,000, the gross profit which would have been realized on the transaction by a consummation of the sale to Thrower; this to be credited with two thirds of the $500 earnest money paid by Thrower at the time he executed the contract, the other one third having been paid over to Haralson in accordance with the terms of petitioners' contract with him, as above set forth.

Thrower filed a general demurrer to the petition, which was overruled, and he excepted.

*Robert C. & Philip H. Alston,* for plaintiff in error.

*Anderson, Felder, Rountree & Wilson,* contra.

BECK, J. (After stating the facts.) Pretermitting any discussion of the question whether or not the word "agents" is not mere descriptio personæ, and whether, therefore, E. Rivers Realty Company were not the only persons who could sue for a breach of the sales contract by Thrower and the other party thereto, notwithstanding the allegations in the petition that E. Rivers Realty Company were in fact the agents of the plaintiffs and that this was known to Thrower, and conceding that the plaintiffs would have the same right to bring suit for a breach of this contract that their alleged agents, E. Rivers Realty Company, would have had, we are of the opinion that the general demurrer to the petition should have been sustained. The written contract as it stands is plain, unambiguous, and complete. Under that contract the defendant had

the right to decline performance " if title of the vendor be legally insufficient and they fail to perfect the same within a reasonable time." According to the showing in the petition, the plaintiffs never had a legally sufficient title. They had no title; they had an interest in an option merely. And while it may be true that owing to the commercial standing of the plaintiffs they would in all probability have secured for Thrower a perfectly good title made through the true owner, it is also true that under the contract as it is written, Thrower, the defendant, contracted for a title coming through the vendors named in this paper constituting the contract. It might be that if the plaintiffs, while they did not have title at the time of the execution of this contract, had, within a reasonable time, acquired a sufficient title to the property in controversy, they would have been in position to exact performance upon the part of Thrower. But they did not put themselves in that position at any time. They never had, up to the time of the expiration of the option, anything more than the legal right, upon compliance with their obligations under the option, to maintain an action for specific performance against the real owner of the property, in case he should refuse to convey, whereby they might acquire title. A tender of a bond for title from the real owner of the property was not the equivalent of a tender of a bond for title from the vendors named in the contract coupled with the showing that they had title to the property. See, in this connection, Wells, Fargo & Co. v. Page, 48 Or. 74 (82 Pac. 856, 3 L. R. A. (N. S.), 103, and the cases cited in the note). Suppose that, on the day when it is alleged that Thrower refused to perform his part of the contract, instead of refusing he had made a tender of the purchase-money in accordance with the contract; would the plaintiffs have been able to perform? Clearly not. We do not overlook the fact that they alleged ability to perform, and that we are dealing with a refusal to sustain a demurrer to the petition. But the allegation of ability to perform, in the light of the entire petition, is nothing more than a conclusion of the pleader, and is to be construed in connection with other allegations in the petition showing that they were holders of an option given by the owner of the property; for we can not overlook the other distinct allegations in the petition showing that title and ownership was in Aldredge. Evidently the allegation in the petition that plaintiffs were able to perform,

42

that is, make title, means merely that they were in position to enforce their rights under the option above referred to. But their rights under this option, however clear, were not the equivalent of the title actually acquired. We do not think that the petition, construed as a whole, shows that the plaintiffs were able to perform, and that if Thrower, instead of refusing to perform, had offered to do so, the plaintiffs could have complied with their obligation. And that being true, .the refusal of the. defendant to perform, and the declaration upon his part that he would not perform, gave the plaintiffs no right of action against him; and the petition should have been dismissed upon general demurrer.

*Judgment reversed. All the Justices concur, except Hill, J., not presiding.*