(No. 18160.—Reversed and remanded.)
GEORGE E. MACY, Plaintiff in Error, *vs.* WALTER H.
BROWN *et al.* Defendants in Error.

*Opinion filed June 22, 1927—Rehearing denied October 11, 1927.*

1. SPECIFIC PERFORMANCE—*acceptance of an option upon terms stated makes contract mutual and binding.* Where a party holding an option signifies his acceptance within the time limited and upon the terms stated, the unilateral contract becomes bilateral and the obligation of the contract becomes mutual and capable of enforcement at the instance of the other party under the ordinary rules governing bilateral contracts.

2. SAME—*when description in lease giving option to purchase is sufficient.* Where a lease provides that the "lessee shall have option to purchase property at 2661-2663 East Seventy-fifth street" for a stipulated sum, the description is sufficiently certain for maintaining a bill for specific performance describing the same property.

3. SAME—*when tender of purchase price is not ineffective because coupled with demand for deed.* Where the payment of the purchase price and the delivery of a deed are to be made concurrently one party is not obliged to perform before the other, and the fact that a tender of the purchase price is coupled with a demand for a deed will not render the tender ineffective, as a tender, in such case, means an offer accompanied with ability to do the act required of the person making the tender provided the other party will concurrently do what he is required to do.

4. SAME—*general rule as to when purchaser is entitled to specific performance.* The main question in a case of specific performance is whether the complainant has made a conscientious effort on his part to comply honestly with the contract, and, as a general rule, to entitle a purchaser to demand a deed and maintain a bill for specific performance it is sufficient that he is ready and offers to pay any sum that may be found to be due and still unpaid and to comply with the contract on his part.

5. SAME—*waiver or abandonment of contract will not be presumed.* Where an abandonment of a contract is relied upon it must be shown to have been the clear intention of the parties to abandon the contract, as courts will indulge no presumptions in favor of a waiver of a contract nor infer waiver or abandonment upon slight proof.

6. TENDER—*equity will not require the doing of a useless act in matter of tender.* The technical rules that govern pleas of tender

in actions at law cannot be applied in equity, and a court of chancery is not bound by any fixed rule on the subject by which the substantial ends of justice are perverted or defeated by the omission of an unimportant or useless act which nothing but the merest technicality could require.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding.

RATHJE, WESEMANN, HINCKLEY & BARNARD, for plaintiff in error.

SCOTT, BANCROFT, MARTIN & MACLEISH, (LELAND K. NEEVES, of counsel,) for defendants in error.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, George E. Macy, (hereinafter called complainant,) has sued out a writ of error from this court to review the decree of the circuit court of Cook county dismissing for want of equity a bill filed by him to compel the specific performance of a contract for the sale of real estate.

The bill alleged that on March 11, 1918, defendant in error Walter H. Brown leased a portion of the premises in question to complainant for a period of five years, and that the written lease contained the following clause: "The lessee is hereby given an option to renew this lease for a like term of five years from March 11, 1923, on similar terms and at a rental to be fixed by three real estate men to be chosen in the following manner: One to be chosen by each party and the men so selected to choose the third real estate man; provided, that as a condition precedent to the exercise of such option, the lessee shall give written notice of his intention to the lessor at least six months prior to March 11, 1923. Lessee shall have option to pur-

chase property at 2661-2663 East Seventy-fifth street for $18,000 cash, five years from this date, on giving similar notice;" that on September 2, 1922, complainant gave notice to Brown of his intention to exercise the option to purchase the premises for the amount specified in the lease; that he had tendered to Brown $18,000 for the purchase of the premises in execution of the option and that Brown had declined and refused to accept the same and had refused to execute a deed for the premises; that complainant had at all times been ready and willing to perform the contract but that Brown had at all times refused to convey the premises. The bill tendered performance of the contract by the complainant. The bill further alleged that Vina Brown, William F. Dunn and Reidar Moe claimed some interest in the premises, and they were made defendants. Dunn and Moe answered, stating that they were tenants under short-term leases from Brown of portions of the premises. Vina Brown answered that she is the wife of Walter H. Brown and claimed an inchoate right of dower in the premises mentioned in the bill and denied that she had entered into any contract with complainant. She also claimed that the premises in question were her homestead. Brown answered admitting the execution of the lease containing the option but denied that it was agreed that complainant should have the option to purchase the whole of the premises described in the bill of complaint for $18,000. He admitted that complainant had given him the written notice on September 2, 1922. He denied the other material allegations of the bill and denied that he does now refuse to carry out the contract or convey the premises to complainant, and stated that because of the failure and refusal on the part of the complainant to perform the conditions required to be performed by him as a condition to the exercise of the option, Brown subsequent to the 11th day of March, 1923, refused to convey the premises to complainant, and that he was justified in so doing by reason of the failure of complain-

ant to perform the conditions of the contract. Complainant filed a replication to the answer.

The cause was referred to a master in chancery, who heard the evidence and reported his conclusions and recommendations to the court. There was very little conflict in the evidence, and the master found that Brown was on the 11th day of March, 1918, the owner of the premises described in the bill, and that on that day he and complainant entered into a written lease signed by both of them, in and by which Brown demised to complainant for a term of five years from March 11, 1918, "a certain store-room situated on the ground floor of the building known and designated as Nos. 2661½ and 2663 East Seventy-fifth street, in the city of Chicago and State of Illinois, and all out-houses and part of basement used in connection with the hardware business now conducted on said premises;" that the lease contained the option clause as hereinbefore set forth; that at the time of the filing of the bill Brown resided in the west flat on the second floor of the building in question with his wife and family and Dunn occupied the east flat on the second floor under a short-term lease; that on September 2, 1922, six months and nine days prior to the expiration of the lease, complainant delivered to Brown a written notice advising him that he desired to purchase the property for $18,000 cash, in accordance with the option contained in the lease, and that complainant was ready and willing to proceed with the purchase at any time from that date forward, and that the purchase price would be available for delivery to Brown at such time as he might desire and at his convenience; that Brown made no reply to this notice; that on Monday, March 5, 1923, complainant, with two of his attorneys, went to Brown's flat with $18,000 in United States gold certificates and offered them personally to Brown. The master, in his report as to what occurred on this occasion, stated that complainant testified that he told Brown that he had come to make the tender in exer-

cising the option to purchase the property; that he had with him $18,000 in gold certificates; that he offered them to Brown, and Brown replied that he would do nothing until he had consulted his attorney; that complainant's counsel then took the money and again tendered it to Brown and showed him that the full $18,000 was there and asked him to count it; that Brown made no effort to extend his hand but simply replied that he would have to see his attorney before taking any action; that complainant had with him a short-form of warranty deed from Brown to complainant conveying the premises for the consideration of $18,000 and releasing his rights under the homestead exemption laws of the State of Illinois, dated March 5, 1923; that the deed was complete except for the signature of the grantor and the name, signature and seal of the notary public upon the blank for the certificate of acknowledgment; that complainant testified that he had offered the money to Brown and that his counsel had stated to Brown, "By signing this little piece of paper you will get this money, $18,000;" that Brown would accept nothing from him, paper or money or anything else; that complainant and his counsel then asked Brown to sign the deed after the $18,000 had been offered to him; that the offer of the $18,000 was not made upon the condition that Brown execute the deed but was made for the purpose of exercising the option, and that afterwards the deed was offered to transfer the property, and that there was a distinct offer of $18,000 made to Brown irrespective of the deed. In his report the master further stated that Brown testified that complainant introduced his lawyers and said that they had come to exercise the option given complainant and had there $18,000 in gold certificates which they would turn over to him when he signed the deed; that Brown asked complainant if the other two men were his lawyers, and complainant said they were, and that Brown said that he would like to be represented by lawyers in the matter

and stated the name of the firm representing him; that complainant's lawyer asked him, "Then you refuse this tender?" and that he replied: "I didn't say that; I said I wanted to be represented by my lawyers in this, the same as Mr. Macy is;" that one of the men said that he could have the $18,000 by simply signing the deed, and that the deed was in the possession of one of complainant's lawyers, was not unfolded and was referred to in the conversation as a "paper" and was not examined by Brown; that on Friday, March 9, 1923, complainant's attorneys wrote Brown a registered letter, which was received by him on Saturday, March 10, 1923, which contained the following: "On behalf of Mr. George E. Macy we wish to confirm the tender made by him last Monday, March 5, 1923, in the sum of $18,000 in currency to you, in exercise of his option to purchase your property at 2661-2663 East Seventy-fifth street, Chicago. We desire to have you know, and this is to advise you, that Mr. Macy has the $18,000 ready to pay you at any time you may suggest, and we desire that there shall be no misunderstanding as to Mr. Macy's readiness, willingness and ability to carry out the option and pay you the $18,000. If you fail to carry out the terms of the agreement we shall be compelled to institute proceedings to compel you to do so. Please let us have some word from you in reply;" that Brown made no reply to this letter; that on Sunday, March 11, 1923, complainant's counsel came to the premises in question and together with complainant and two men from a bank went to the flat occupied by Brown and knocked on the door; that Brown's brother answered and admitted them and said that Brown had just left for church and would not return for about an hour and a half; that complainant then wrote a note to Brown, which was on the same day delivered to Brown, it being as follows: "I have 18 $1000 U. S. gold certificates for you for the purchase of these premises; call me any time to-day or to-morrow;" that at that time complainant

326–36

had $18,000 in United States gold certificates and asked Brown's brother to count them; that Brown made no reply to this note, although he saw complainant later that same day; that on the following day, Monday, March 12, 1923, complainant, with his counsel and a man from the bank, again went to Brown's flat with $18,000 in currency and Mrs. Brown answered their knock; that they told her their mission and she refused them admittance; that on the latter occasion complainant had with him a short-form of warranty deed purporting to convey the premises from Brown to him for $18,000, dated March 12, 1923. The master found expressly that complainant was on the 5th day of March, 1923, and had been continuously since that date and was at the time of the hearing, ready, able and willing to pay $18,000 to Brown for the premises in question; that if a decree for specific performance were awarded it would have to be subject to the dower and homestead rights of Vina Brown, the wife of Brown, and also subject to the rights of the tenants. The master further found "that while complainant and his counsel made strenuous efforts to make a valid tender, and while the master believes that Macy acted in good faith throughout, and while the master appreciates the difficulty of keeping a man from a bank waiting around with $18,000 in gold certificates, nevertheless the tender, to avail Macy, should have been renewed to Brown when he returned to his flat March 11, 1923, or, in case he should not have returned, the tender should have been maintained during that day." The master therefore concluded that the efforts of complainant and his counsel to make a tender were unavailing and recommended that the bill of complaint be dismissed for want of equity. Objections were filed and stood as exceptions. The court followed the master's recommendation and dismissed the bill for want of equity.

It is first contended by defendants in error that the notice of September 2, 1922, did not convert the option

contract into a contract of purchase and sale, and that it remained an option until the expiration of the time limited for its exercise. Where the party holding an option signifies his acceptance within the time limited and upon the terms stated, the obligation of the contract becomes mutual and capable of enforcement at the instance of either party. (*Guyer* v. *Warren*, 175 Ill. 328; *Estes* v. *Furlong*, 59 id. 298; *Carter* v. *Love*, 206 id. 310; *Keogh* v. *Peck*, 316 id. 318.) When complainant, within the time limited, accepted defendant's offer the unilateral contract was thereby rendered a bilateral one, and the performance of the contract thus resulting was governed by the ordinary rules pertaining to bilateral contracts. 43 L. R. A. (n. s.) 1150; 5 Pomeroy on Spec. Perf. 2333, and cases cited to note 10.

It is next contended by defendants in error that there was no meeting of the minds as to the property to be sold, and that the identity of the property is left in such a state of uncertainty as to preclude relief by way of specific performance. The evidence shows that the property described in the option portion of the lease and in the bill of complaint is the same property. The description of the property in the lease was sufficiently certain. *Fuller* v. *Fuller*, 315 Ill. 214; *Gilbert* v. *McCreary*, 87 W. Va. 56; *Baker* v. *Puffer*, 299 Ill. 486.

It is contended by defendants in error that the tender made March 5, 1923, was not a valid tender for the reason that it is claimed by Brown that complainant coupled his tender with a demand for a deed. Under the terms of the contract in question the payment of the purchase price and the delivery of the deed were to be made concurrently. Where the agreement requires the acts of both parties to be done at the same time one is not obliged to perform his part before the other. A tender, as applied to such a case, means an offer accompanied with ability to do the act required of the person making the tender provided the other party will concurrently do what he is required to do. *Miller*

v. *Shea,* 300 Ill. 180; *Smith* v. *Gillett,* 50 id. 290; *Funk* v. *Hough,* 29 id. 145; *Clark* v. *Weis,* 87 id. 438; *Manistee Lumber Co.* v. *Union Nat. Bank,* 143 id. 490.

It is contended by defendants in error that the contract in question required the payment of the purchase price, or tender thereof, as an essential to the exercise of the option, and required that payment or tender be made on March 11, 1923, and not at any other time, and that in order to maintain a suit for specific performance complainant must show that on March 11, 1923, he tendered to Brown, in person, $18,000 cash, unconditionally. With this contention we cannot agree. The technical rules that govern pleas of tender in actions at law are manifestly inapplicable to the circumstances of suits in chancery, and a court of chancery is not bound down by any fixed rule on this subject by which it will allow the substantial ends of justice to be perverted or defeated by the omission of an unimportant or useless act which nothing but the merest technicality could require. (*Webster* v. *French,* 11 Ill. 254.) The main question in a case of specific performance is whether the complainant has made a conscientious effort on his part to comply honestly with the contract. (*Ebert* v. *Arends,* 190 Ill. 221; *Kimball* v. *Tooke,* 70 id. 553; *Monson* v. *Bragdon,* 159 id. 61.) The general rule is, that to entitle a purchaser to demand a deed and maintain a bill for specific performance it is sufficient that he is ready and offers to pay any sum that may be found to be due and still unpaid and to comply with the contract on his part. (*Mix* v. *Beach,* 46 Ill. 311; *Watson* v. *White,* 152 id. 364; *Boston* v. *Nichols,* 47 id. 353.) The evidence in this case shows that the contract for sale was fairly entered into and was for a valuable consideration, (*Keogh* v. *Peck, supra,*) and it was a valid contract binding upon both parties at the time of the bringing of this suit unless it had been abandoned or forfeited. Forfeiture is a harsh remedy and is by no means a favorite with a court of chancery under any

circumstances, (*Watson* v. *White, supra,*) and where an abandonment is relied upon there must be shown a clear intention of the parties to abandon the contract, (*Mix* v. *White,* 36 Ill. 484,) as courts will indulge no presumptions in favor of a waiver of a contract nor infer a waiver or abandonment upon slight proof. (*Evans* v. *Gary,* 174 Ill. 595.) There is no evidence in the record that complainant ever had the slightest intention of abandoning the contract, but, on the contrary, the evidence shows that he was ready, able, willing and eager to carry it out, and on March 5 personally tendered to Brown $18,000, and on Sunday, March 11, and on Monday, March 12, took $18,-000 cash to Brown's home for the purpose of carrying out the contract, and on the next day, March 13, commenced this suit for its specific performance. The evidence shows that although Brown was fully cognizant of complainant's ability, readiness and willingness to perform the contract, he was not ready and willing to perform the concurrent act required of him by the contract and give to complainant a deed of the premises. He never had such deed prepared and refused to look at the one prepared by complainant. Under the evidence in this case the court should have decreed Brown to specifically perform the contract and give to complainant his deed for the premises. As the contract was not signed by Vina Brown, such deed would be subject to her rights in the premises and subject to the rights of Moe and Dunn therein, if any.

The decree of the circuit court is reversed and the cause remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*